BYE, Circuit Judge.
A Missouri jury convicted Herbert Smulls of first degree murder and other crimes and sentenced him to death. His convictions and sentence were affirmed on appeal and his motion for post-conviction relief was denied. Smulls then filed this 28 U.S.C. § 2254 petition raising numerous grounds for relief. The district court de *1110 nied the petition and this court granted a certificate of appealability. We now affirm in part, reverse in part, and remand for further proceedings.
I
On July 27, 1991, Smulls and Norman Brown robbed a jewelry store owned by Stephen and Florence Honickman. In the course of the robbery, Smulls shot Stephen and Florence; Steven died from his wounds and Florence sustained permanent injuries. Smulls was charged with first degree murder, first degree assault, two counts of first degree robbery and two counts of armed criminal action. At his first trial, the jury found Smulls guilty of first degree robbery but failed to reach verdicts as to the remaining counts. Upon retrial, the jury found Smulls guilty of the five remaining counts.
During jury selection at Smulls’s second trial, defense counsel objected to the prosecutor’s exercise of a peremptory challenge to remove Margaret Sidney from the jury. Counsel identified Sidney as African-American and argued the prosecutor’s challenge violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The prosecutor offered the following explanation for the challenge:
Judge, I made nine strikes. I did strike the juror Ms. Sidney who, I guess, for the record was a black female. My reasons for striking Ms. Sidney are based both upon what I observed during our voir dire and based upon my experience in trying criminal lawsuits, which has exceeded 50 cases in this courthouse including several cases before this Court in the nine years that I have been a prosecuting attorney. My concerns with Ms. Sidney began yesterday. Ms. Sidney was very silent during all of the questioning. I observed at one point during my questioning concerning the death penalty a glare on her face as I was questioning that area. She was seated in the back row, I believe, yesterday. When I looked directly at her and asked that last row a question, she averted her eyes and wouldn’t answer my question and wouldn’t look at me. That made me very nervous. The only response I was able to get out of Ms. Sidney today was when I asked her about her occupation. At first she responded with what I though [sic] was a very irritated answer. She indicated that she is a mail sorter for Monsanto Company. That she sorts mail for, I believe she said, 5000 people. And her husband works for the post office. And I believe she listed him as a custodian. It’s been my experience in the nine years that I’ve been a prosecutor that I treat people who work as mail sorters and as mail carriers, letter carriers and people who work for the U.S. Post Office with great suspicion in that they have generally — in my experience in many of the trials that I’ve had — are very disgruntled, unhappy people with the system and make every effort to strike back. In my experience as a prosecutor, in trying cases where I’ve had several cases and left mail people on the jury, had them result in a hung jury. The most recent of which was a murder case in this courthouse last September, State versus Dana Ruff (phonetically) where a mail carrier was the holdout for a hung jury in that case. I also have several in-laws who are employees of the postal department and even though they are somewhat relatives, I share the same opinion of them. So I treat them with great suspicion. When she glared at me and just her general attitude, which included her outfit — which yesterday, I believe, included a beret and today was a ball cap with sequins on it, I just felt that she wouldn’t be a good states [sic] *1111 juror. Certainly, not a strong juror in the consideration of death, should we get to that part of the trial. And also I would point out for the Court that I struck juror number eight, Ms. Dillard. I struck her for the very same reason in that she is a letter carrier and works delivering mail. And I though [sic] her attitude was also confrontational. And I did not feel that her answers were ones that would give rise to me believing she would be a strong states [sic] juror. Ms. Dillard, I would point out, is a white female. And I struck her for virtually the same reasons. It’s been my experience that when I left postal workers on who seem to have an attitude, based on my interpretation, that I’ve had bad results. And that’s why I struck her.
Appellant’s App. at 14-16.
Without waiting for a response from Smulls’s lawyer, the trial court overruled the Batson challenge. Defense counsel persisted, however, and argued:
First of all, I’ve been a trial attorney as long as he has, trying as many cases as he has and I didn’t detect any type of attitude from Ms. Sidney. Secondly, he said she remained silent during his questioning during the death qualification. He didn’t ask her a direct question. Numerous jurors remained silent during his death question because he didn’t ask them direct questions. Ms. Beeson. He didn’t ask Ms. Uhlmansiek questions although he did strike her. Ms. Linn, who is a white female, she remained totally silent. I’m the only one who talked to her at all other than Mr. Copper asking her what municipality she lived in, but he did not strike her. So numerous jurors and the record will reflect that, remained silent during Mr. Waldemer’s questioning. Once again today when he asked her about her occupation I did not detect any kind of animosity on her part. I think the clothing reasons are clearly pretextural [sic], I think that there is a case where there was a juror struck on the basis of looking like what the prosecutor called a ‘due debt.’ And the Court found that to be pretextural [sic] and sent it back. That occurred in the City of St. Louis, but I don’t have the name of the case. With regard to her being a postal worker, Mr. Waldemer has mentioned that they’re at the bottom of the employment rung. I think a lot of postal workers make more money, because they’re federal employees, than a lot of people who come in here for jury duty. He said he struck Ms. Dillard because she was a postal worker. She also indicated she knew the victim in this case, Florence Honiekman. And to be perfectly honest, I would think that the state might have concerns that she wouldn’t like Mrs. Honiekman based on Mrs. Honickman’s demeanor and based on comments that Mr. Waldemer made about Mrs. Honick-man. So that could have very well been part of the reason for striking Ms. Dillard, other than her being a postal employee. So I feel that his reasons were pretextural [sic].
Id. at 16-18.
Without making any on-the-record findings articulating its reasoning, the trial court overruled the Batson challenge. The following morning, Smulls’s attorney renewed the Batson challenge and the following colloquy occurred:
MS. KRAFT: Judge, I believe I stated on the record yesterday when I made my record that Ms. Sidney was the only black juror remaining out of the 30.
THE COURT: You made that statement. MS. KRAFT: Okay.
THE COURT: You see, I have a problem. I don’t know what it is to be black. I don’t know what constitutes black.
*1112 And I never, in this Court, no matter what any appellate court may say, I never take judicial notice that anybody is black or that only one person or four persons or eight persons are black. That to me is something that I don’t think this Court is wise enough or any other appellate court is wise enough unless there is direct evidence as to who is black and who is white and who is orange and who is purple. I do not under any circumstances in this division ever take judicial notice of the number of people who are black. And I believe that’s counsel’s responsibility to prove who is black and who isn’t or who is a minority and who isn’t. There were some dark complexioned people on this jury. I don’t know if that makes them black or white. As I said, I don’t know what constitutes black. Years ago they used to say one drop of blood constitutes black. I don’t know what black means. Can somebody enlighten me of what black is? I don’t know; I think of them as people. I listened to the responses of Ms. Sidney. I watched her attitude very briefly as it may have been, and I’m not going to sit here and say to you that Ms. Sidney is not black. But I’m not going to make a judgment as to whether anybody else on the panel was, so in any event, I’m merely telling you that for the record. I’d rather not even discuss it on the record. But, in any event, I’m going to deny your motion for a mistrial on the basis stated. Are we ready to proceed?
Id. at 26-28.
On appeal, the Missouri Supreme Court, without commenting on the absence of findings, upheld the trial court’s denial of the Batson challenge. The Court concluded the trial court did not clearly err because “[r] easons such as these have been found to support a ruling that a trial court did not clearly err[,]” and “[e]ven assuming the prosecutor’s reasons for challenging mail sorters and postal workers are nonsensical, this does not establish the reasons are inherently pretextual.” State v. Smulls, 935 S.W.2d 9, 15-16 (Mo.S.Ct.1996) (en banc).
Thereafter, Smulls filed his § 2254 petition. After the district court denied the petition, we granted a certificate of appeal-ability. On appeal, Smulls argues 1) the prosecutor violated Batson by striking the lone black venireperson from the jury, 2) counsel was ineffective for failing to fully develop the Batson challenge, and 3) counsel was ineffective for failing to seek the disqualification of the trial judge.
II
Our review of Smulls’s claims is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AED-PA). We may not grant a writ of habeas corpus with respect to any issue decided by the Missouri courts unless the decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court” or the decision “was based on an unreasonable determination of the facts in light of the evidence presented in the State court.” 28 U.S.C. § 2254(d)(1), (2). In Penry v. Johnson, 532 U.S. 782, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001), the Supreme Court reiterated its interpretation of § 2254(d)(l)’s “contrary to” and “unreasonable application of’ federal law standards.
A state court decision is “contrary to” clearly established precedent if the state court either “applies a rule that contradicts the governing law set forth in our cases,” or “confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our *1113 precedent.” A state court decision will be an “unreasonable application of’ our clearly established precedent if it “correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner’s case.”
Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.
532 U.S. at 792-93, 121 S.Ct. 1910 (citations omitted).
When reviewing a district court’s denial of a § 2254 petition, we review the court’s findings of fact for clear error and conclusions of law de novo. King v. Bowersox, 291 F.3d 539, 540 (8th Cir.2002).
Smulls first argues the prosecutor’s peremptory challenge of venireperson Sidney violated Batson. The Equal Protection Clause of the United States Constitution prohibits using peremptory challenges to exclude jurors on the basis of race. Batson, 476 U.S. at 89, 106 S.Ct. 1712. To prove purposeful discrimination in the use of a peremptory challenge, a defendant must first make a prima facie case of racial discrimination. If such a showing is made, the state must suggest a race-neutral explanation for the strike. Finally, if a race-neutral explanation is offered, the trial court must decide whether the party objecting to the strike has proved purposeful discrimination. Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); United States v. Jones, 245 F.3d 990, 992 (8th Cir.2001).
Smulls argues the prosecutor’s stated reasons were pretextual because they were contrary to or unsupported by the record. For example, Smulls claims the prosecutor’s characterization of Sidney as a “mail sorter” or “mail carrier” was erroneous because the record shows Sidney was a member of management at Monsanto, and, among other duties, supervised employees responsible for sorting and distributing mail. Additionally, Smulls argues the prosecutor’s claim that a previous jury had been hung by a postal employee is factually inaccurate.[1]
Both the trial court and the Missouri Supreme Court failed to analyze these factual disputes on the record. The district court took note of them but concluded, based on its review of the record, the prosecutor was aware of Sidney’s actual job description and, even though he was mistaken about his earlier trial, the prosecutor believed a postal worker voted against conviction. Therefore, the district court concluded the Missouri courts’ application of federal law was not unreasonable.
Smulls also argues the district court’s rejection of his Batson challenge was erroneous because the trial court failed to make any factual findings to support the prosecutor’s claim Sidney “glared” at him or acted “irritated” by the questioning. According to Smulls, defense counsel disputed the prosecutor’s alleged observations and the trial court should have resolved the dispute on the record. Smulls also argues the side-by-side comparison of Sidney and venireperson Dillard was improper because Dillard knew the victim and was, therefore, not similarly situated.
Once again, neither the trial court or the Missouri Supreme Court chose to address these arguments on the record. The district court noted the lack of findings but *1114 rejected the arguments because defense counsel’s disagreement “neither confirms nor denies that Ms. Sidney had a poor demeanor.” Further, the district court concluded the lack of findings did not make the trial court’s decision unreasonable. Instead, it concluded the trial court’s rejection of the Batson challenge, and the Missouri Supreme Court’s reliance upon the trial court, were reasonable based on the record.
We are concerned with the perfunctory manner in which the trial court handled Smulls’s Batson challenge. We have previously emphasized the need to “make[ ] detañed findings on the record in support of a ruling on a peremptory challenge under Batson.” Moran v. Clarke, 443 F.3d 646, 653 (8th Cir.2006) (citing U.S. Xpress Enter., Inc., v. J.B. Hunt Transp., Inc., 320 F.3d 809, 814 (8th Cir.2003)). Such a view is entirely consistent with clearly established Supreme Court precedent stressing the importance for trial courts to carefully consider all evidence bearing on the issue. See Batson, 476 U.S. at 96, 106 S.Ct. 1712 (“In deciding whether the defendant has made the requisite [pri-ma facie] showing, the trial court should consider all relevant circumstances.”). As to the issue of discriminatory intent — the third step in a Batson challenge, “Batson ... requires the judge to assess the plausibility of [the prosecutor’s] reason in light of all evidence with a bearing on it.” Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 2331-32, 162 L.Ed.2d 196 (2005) (citation omitted). “In deciding if the defendant has carried his burden of persuasion, a court must undertake a ‘sensitive inquiry into such circumstantial and direct evidence of intent as may be available.’ ” Batson, 476 U.S. at 93, 106 S.Ct. 1712 (quoting Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)).
The record before us offers little to suggest the trial court engaged in the evaluative process anticipated by Batson and its progeny. Notably, the court initially denied the challenge without ever affording defense counsel an opportunity to rebut the racially-neutral reasons offered by the prosecutor. Despite these concerns, however, our decision today is not based solely upon what the trial court failed to say on the record. But see Hardcastle v. Horn, 368 F.3d 246, 259 (3d Cir.2004) (‘[S]ome engagement with the evidence considered is necessary as part of step three of the Batson inquiry,’ and requires ‘more than a terse, abrupt comment that the prosecutor has satisfied Batson.’) (quoting Riley v. Taylor, 277 F.3d 261, 290-91 (3d Cir.2001) (en banc)); Barnes v. Anderson, 202 F.3d 150, 156 (2d Cir.1999) (ordering a new trial where the trial court denied a Batson challenge “without explicit adjudication of the credibility of the non-movant’s race-neutral explanations for the challenged strikes.”); and United States v. Hill, 146 F.3d 337, 342 (6th Cir.1998) (remanding where “the record ... indicates nothing about the district court’s thought processes ... apart from its abrupt conclusion ... that the prosecutor’s asserted justification outweighed [the defendant’s] showing under the totality of the circumstances.”). Rather, we reverse because trial court refused to recognize and assess all relevant circumstances as required by clearly established federal law.
When defense counsel attempted to establish for the record that Sidney was the only black juror remaining in the jury pool, the trial court inexplicably refused to acknowledge or consider the racial composition of the jury pool. “I don’t know what constitutes black. And I never, in this Court, no matter what any appellate court may say, I never take judicial notice that anyone is black or that only one person or *1115 four persons or eight persons are black.” Instead of considering the composition of the jury pool, as mandated by Supreme Court precedent, the trial court imposed upon the defendant an unprecedented, if not impossible, burden:
That to me is something that I don’t think this Court is wise enough or any other appellate court is wise enough unless there is direct evidence as to who is black and who is white and who is orange and who is purple. I do not under any circumstances in this division ever take judicial notice of the number of people who are black. And I believe that’s counsel’s responsibility to prove who is black and who isn’t or who is a minority and who isn’t.
Appellant’s App. at 27.
We fail to comprehend how a trial court, faced with a Batson challenge, can purport to fulfill its obligation to properly evaluate the merits of such a claim without taking the race of prospective jurors into account. Further, we do not believe a trial court may simply avoid Batson by demanding the proponent of the challenge meet a burden of proof which finds no support in Supreme Court precedent.
We are aware the parties focus their arguments only on Sidney and there is no contention other jurors were improperly struck from the jury pool. Thus, it could be argued the trial court’s refusal to consider the race of other prospective jurors is irrelevant to this discussion. We believe, however, under the unusual circumstances of this case, the trial court’s actions and comments are indicative of a deeper problem. The trial court’s initial failure to afford defense counsel an opportunity to respond to the prosecutor’s racially-neutral reasons, the complete lack of findings, and the trial court’s refusal to consider the race of prospective jurors absent “direct evidence,” combine to demonstrate the court was from the outset antagonistic towards the Batson challenge and unwilling to engage in the sensitive inquiry into circumstantial and direct evidence as required. See U.S. Xpress Enter., Inc., 320 F.3d at 814 n. 4 (noting that under certain circumstances the “lack of specificity in a trial court record to demonstrate compliance with the Batson analysis may require remand for further findings.”). Thus, we are not bound by the normal presumption of correctness in favor of the trial court’s findings or the Missouri Supreme Court’s affirmance of those findings. Any other conclusion would render illusory the already tenuous protections afforded under Batson.
We do not hold that, had the trial court accepted and applied controlling Supreme Court precedent, Smulls’s Batson challenge would necessarily have been successful. Instead, we conclude the trial court’s apparent finding of no purposeful discrimination cannot be accorded the normal presumption of correctness because of its refusal to consider all relevant circumstances as required by clearly established federal law. Moreover, the Missouri Supreme Court’s conclusion that the trial court acted properly was an unreasonable application of clearly established federal precedent. Accordingly, we reverse that portion of the district court’s judgment denying Smulls’s habeas petition based on a violation of Batson, and remand with instructions to, in the district court’s discretion, reconstruct the circumstances surrounding Smulls’s Batson challenge to determine whether the prosecutor’s strike of venireperson Sidney was racially motivated. We recognize the passage of time and other circumstances, e.g., the disqualification of the trial court from post-conviction proceedings, may make such a task impossible or unsatisfactory. If that proves true, we direct *1116 the district court to grant the writ. See Batson, 476 U.S. at 100, 106 S.Ct. 1712 (remanding for further analysis of the Batson claim); Brinson v. Vaughn, 398 F.3d 225, 235 (3d Cir.2005) (same); Hardcastle, 368 F.3d at 261-62 (same); and Galarza v. Keane, 252 F.3d 630, 640-41 (2d Cir.2001) (same).[2]
Ill
For the reasons stated herein, the district court’s dismissal of the petition is reversed, and the case is remanded for further proceedings in accordance with this opinion. We affirm the district court in all other respects.

. The state concedes the prosecutor’s claim was inaccurate.

. We find Smulls’s remaining ineffective assistance of counsel claims to be without merit and affirm the district court's dismissal of those claims.