# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 05-2456

_____

Herbert Smulls,                                              *
                                                             *
              Appellant,                                     *
                                                             *     Appeal from the United States
        v.                                                   *     District Court for the
                                                             *     Eastern District of Missouri.
Don Roper, Superintendent, Potosi                            *
Correctional Center,                                         *           [PUBLISHED]
                                                             *
              Appellee.                                      *

_____

Submitted: September 26, 2007
Filed: July 29, 2008

_____

Before LOKEN, Chief Judge, WOLLMAN, HANSEN, MURPHY, BYE, RILEY, MELLOY, SMITH, COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges, En Banc.

_____

HANSEN, Circuit Judge.

A Missouri jury found Herbert Smulls guilty of first degree murder, as well as other crimes, and he was sentenced to death. The Supreme Court of Missouri ultimately affirmed Smulls' convictions on direct appeal and denied his motions for

postconviction relief. The district court[1] denied Smulls' 28 U.S.C. § 2254 petition, and this court granted a certificate of appealability on Smulls' Batson[2]-related claims. After a divided panel of this court affirmed in part and reversed and remanded in part, Smulls v. Roper, 467 F.3d 1108 (8th Cir. 2006), we granted the State's petition for rehearing en banc and vacated the panel opinion. We now affirm the district court's denial of habeas relief.

I.

On July 27, 1991, Smulls and Norman Brown robbed a jewelry store owned by Stephen and Florence Honickman. In the course of the robbery, Smulls shot Stephen and Florence; Stephen died from his wounds, and Florence sustained permanent injuries. Smulls was charged with first degree murder, first degree assault, two counts of first degree robbery, and two counts of armed criminal action. At his first trial, the jury found Smulls guilty of first degree robbery but failed to reach verdicts on the remaining counts. Upon retrial, the jury found Smulls guilty of the remaining counts.

During jury selection at Smulls' second trial, his defense counsel objected to the prosecutor's exercise of a peremptory challenge to remove Margaret Sidney from the jury. The defense moved to quash the jury and moved for a mistrial on the basis of a Batson violation. Counsel identified Ms. Sidney as the only black person left on the 30-person venire panel from which peremptory challenges were made and argued that the prosecutor's removal of Ms. Sidney left Smulls, who was black, to face an all-white jury. Counsel "fe[lt] that the state struck her in a racially discriminatory manner." (Appellant's App. at 13.) The trial court asked the prosecutor to address the claim. The prosecutor recognized that Ms. Sidney was a black female and discussed

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

[2]Batson v. Kentucky, 476 U.S. 79 (1986).

his reasons for striking her from the panel. The prosecutor described Ms. Sidney's demeanor during his examination of the panel, particularly during the discussion of the potential death penalty, and he specifically recounted a glare on her face, an aversion of her eyes, and an irritated answer to one of his questions. He also discussed Ms. Sidney's occupation, which he described as a mail sorter for 5,000 people at Monsanto, and which, in his view, equated her with postal service workers. According to the prosecutor, he had had negative experiences with postal workers who served as jurors in the past. He noted her general demeanor, which, in his discussion, included the fact that she wore a beret one day and a sequined cap the next. Finally, the prosecutor compared Ms. Sidney to another white juror, Ms. Dillard, whom he had struck because she was a postal worker with a confrontational attitude. Following the prosecutor's explanation for striking Ms. Sidney, the trial court overruled the request to quash the jury and denied the motion for a mistrial. Defense counsel then argued that the prosecutor's stated reasons were pretextual, addressing the various points made by the prosecutor and discussing several other venirepersons. The trial court, noting that it was ruling only on the <u>Batson</u> challenge to the strike of Ms. Sidney, again overruled the objection. Defense counsel then moved the court to disallow the strike of Ms. Sidney, to which the trial court responded, "Based upon what is before the Court that request will be denied." (<u>Id.</u> at 19.)

The next morning, defense counsel renewed the motion for a mistrial and the motion to quash the jury based on <u>Batson</u>, arguing "that the striking of Ms. Margaret Sidney the black female juror who was the only black remaining juror out of 30 we qualified, was struck on a racially discriminatory basis." (<u>Id.</u> at 22.) Defense counsel asked to supplement the record made the previous day, which the court allowed. The court allowed the prosecutor to respond and then denied the motion for a mistrial for the third time. Undeterred, defense counsel responded to the denial by stating, "Judge, I believe I stated on the record yesterday when I made my record that Ms. Sidney was the only black juror remaining out of the 30." (<u>Id.</u> at 26-27.) At this point, the trial judge's frustration became apparent.

-3-

THE COURT: You made that statement.

MS. KRAFT: Okay.

THE COURT: You see, I have a problem. I don't know what it is to be black. I don't know what constitutes black. And I never, in this Court, no matter what any appellate court may say, I never take judicial notice that anybody is black or that only one person or four persons or eight persons are black.

That to me is something that I don't think this Court is wise enough or any other appellate court is wise enough unless there is direct evidence as to who is black and who is white and who is orange and who is purple. I do not under any circumstances in this division ever take judicial notice of the number of people who are black. And I believe that's counsel's responsibility to prove who is black and who isn't or who is a minority and who isn't.

There were some dark complexioned people on this jury. I don't know if that makes them black or white. As I said, I don't know what constitutes black. Years ago they used to say one drop of blood constitutes black. I don't know what black means. Can somebody enlighten me of what black is? I don't know; I think of them as people.

I listened to the responses of Ms. Sidney. I watched her attitude very briefly as it may have been, and I'm not going to sit here and say to you that Ms. Sidney is not black. But I'm not going to make a judgment as to whether anybody else on the panel was, so in any event, I'm merely telling you that for the record.

I'd rather not even discuss it on the record. But, in any event, I'm going to deny your motion for a mistrial on the basis stated. Are we ready to proceed?

(Id. at 27-28.)  Smulls was ultimately convicted by a jury containing no black jurors. On appeal, the Supreme Court of Missouri unanimously rejected Smulls' claim that the prosecutor violated Batson by improperly striking Ms. Sidney.  State v. Smulls,

-4-

935 S.W.3d 9, 15-16 (Mo. 1996) (en banc) (White, J.), <u>cert.</u> <u>denied</u>, 520 U.S. 1254 (1997). Following numerous state postconviction proceedings concerning a motion to disqualify the state trial judge from presiding over the postconviction hearings, the Supreme Court of Missouri ultimately affirmed the denial of all postconviction relief. <u>Smulls v. State</u>, 71 S.W.3d 138 (Mo. 2002) (en banc).

Smulls filed a 28 U.S.C. § 2254 petition for habeas review, which was denied by the district court. We granted a certificate of appealability to review Smulls' <u>Batson</u>-related claims.

## II.

"On an appeal from a district court's denial of a petition for writ of habeas corpus, we review its findings of fact for clear error and its conclusions of law *de novo*." <u>Chavez v. Weber</u>, 497 F.3d 796, 801 (8th Cir. 2007). Our review, as was the district court's, is strictly circumscribed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, when a state prisoner's claim has been adjudicated on the merits in state court, a federal court "shall not . . . grant[]" an application for a writ of habeas corpus unless the state courts' adjudication of the prisoner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In ruling on an application for a writ of habeas corpus, "a determination of a factual issue made by a State court shall be presumed to be correct," unless rebutted "by clear and convincing evidence." § 2254(e)(1).

AEDPA's substantial limitations on collateral review reflect Congress's concern for federalism. "A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (Miller-El I); see also Rice v. Collins, 546 U.S. 333, 344 (2006) (Breyer, J., concurring) ("[C]onsiderations of federalism require federal habeas courts to show yet further deference to state-court judgments."). The Supreme Court recently reiterated that AEDPA "create[d] an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." Uttecht v. Brown, 127 S. Ct. 2218, 2224 (2007) (reversing Ninth Circuit's grant of habeas relief where the court "failed to respect the limited role . . . prescribed by Congress" and the Court's precedent). With these restrictions in mind, we turn to Mr. Smulls' claims that he is entitled to habeas relief.

Peremptory strikes have long been a part of our jury trial system. Peremptory strikes date back to ancient Roman times and were eventually carried to this country when the colonists separated from England. See generally Roger Enriquez & John W. Clark III, The Social Psychology of Peremptory Challenges: An Examination of Latino Jurors, 13 Tex. Hisp. J.L. & Pol'y 25, 28-30 (2007) (discussing the history of peremptory challenges). The nature of a peremptory strike, which, by definition means "[n]ot requiring any shown cause; arbitrary," Black's Law Dictionary 1157 (7th ed. 1999), allows both the prosecutor and the defense counsel to remove a potential juror from the panel based entirely on his or her instinct or gut feeling that an individual would not be a favorable juror. While peremptory strikes are an important part of our jury system, see Batson, 476 U.S. at 91 (noting that peremptory "challenges traditionally have been viewed as one means of assuring the selection of a qualified and unbiased jury"); Lewis v. United States, 146 U.S. 370, 376 (1892) (deeming peremptory strikes a necessary component of a litigant's right to a fair trial), their arbitrary nature has allowed prosecutors to use the strikes to purposely remove a venireperson from the jury solely on the basis of the venireperson's race. Race

-6-

discrimination within the judicial process at any stage, including the selection of jurors, "raises serious questions" as to the fairness of the process itself. Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 628 (1991). "Racial bias mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality." Id. Not only do racially motivated strikes violate the defendant's Constitutional right to equal protection, see Batson, 476 U.S. at 84-85 (discussing the Court's century-old holding in Strauder v. West Virginia, 100 U.S. 303 (1880), that "the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded"), they violate the venireperson's own right to equal protection by "denying the excluded venireperson the honor and privilege of participating in our system of justice," Edmonson, 500 U.S. at 619 (holding that Batson applies to jury selection in private, civil litigation). The Court has engaged in "unceasing efforts to eradicate racial discrimination in the procedures used to select the venire from which individual jurors are drawn." Batson, 476 U.S. at 85; see also id. at 85-86 (discussing the Court's jurisprudence since Strauder); Powers v. Ohio, 499 U.S. 400, 404 (1991) (holding that a defendant may challenge a racially motivated strike of a venireperson not of the defendant's race based on the defendant's "right to be tried by a jury whose members are selected by nondiscriminatory criteria").

Despite the important protections afforded defendants by Batson, a Batson challenge can be difficult to resolve because the Batson analysis requires a court to assess the prosecutor's subjective motivation for exercising a peremptory strike. See id. at 93-95 (discussing the Court's equal protection jurisprudence concerning jury selection). Because a peremptory strike can be instinctive (indeed perhaps even subliminal) to begin with, it is difficult for a defendant to establish, as is his burden when challenging a strike as discriminatory, that the prosecutor had an unstated, impermissible, unconstitutional discriminatory motive for exercising the strike. See Rice, 546 U.S. at 343 (Breyer, J., concurring) ("How can trial judges second-guess an instinctive judgment the underlying basis for which may be a form of stereotyping

-7-

invisible even to the prosecutor?"); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 238 (2005) (<u>Miller-El II</u>) ("The rub has been the practical difficulty of ferreting out discrimination in selections discretionary by nature, and choices subject to myriad legitimate influences, whatever the race of the individuals on the panel from which jurors are selected."); <u>Batson</u>, 476 U.S. at 106 (Marshall, J., concurring) (discussing the fact that a prosecutor may not even recognize his own subconscious racism).

These difficulties notwithstanding, peremptory challenges remain a significant part of our jury trial process, and the Supreme Court continues to stand by the <u>Batson</u> framework as the proper method to determine whether a prosecutor has engaged in purposeful unconstitutional discrimination in exercising peremptory challenges. Under <u>Batson</u>, a trial court must engage in a three-step inquiry. The trial court first determines whether the defendant has made a prima facie showing that a prosecutor's peremptory strike was based on race. <u>Rice</u>, 546 U.S. at 338. If the defendant satisfies the first step, the burden then shifts to the prosecutor to present a race-neutral explanation for striking the juror. The prosecutor's stated reason need not be "'persuasive, or even plausible'" as long as it is not inherently discriminatory. <u>Id.</u> (quoting <u>Purkett v. Elem</u>, 514 U.S. 765, 768 (1995) (per curiam)). The burden then shifts back to the defendant at the third step to shoulder his ultimate burden of establishing purposeful discrimination. The "final step involves evaluating 'the persuasiveness of the justification' proffered by the prosecutor." <u>Id.</u> (quoting <u>Purkett</u>, 514 U.S. at 768).

A.    AEDPA's "Unreasonable Application of Clearly Established Federal Law" Requirement

Smulls first argues that the Missouri trial court made no findings concerning the validity of the prosecutor's claimed race-neutral reasons for the strike, and therefore the court unreasonably applied federal law. Smulls fails to direct us to any Supreme Court case holding that the Constitution requires a trial court to make specific fact-

findings in reviewing a <u>Batson</u> challenge. <u>See</u> <u>Carey v. Musladin</u>, 127 S. Ct. 649, 653 (2006) ("'[C]learly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)). In fact, federal law has never required explicit fact-findings following a <u>Batson</u> challenge, especially where a prima facie case is acknowledged and the prosecution presents specific nondiscriminatory reasons on the record. <u>See</u> <u>Miller-El I</u>, 537 U.S. at 347 ("We adhere to the proposition that a state court need not make detailed findings addressing all the evidence before it."); <u>see</u> <u>also</u> <u>McKinney v. Artuz</u>, 326 F.3d 87, 100 (2d Cir. 2003) ("Although reviewing courts might have preferred the trial court to provide express reasons for each credibility determination, no clearly established federal law required the trial court to do so."). A trial court's ruling on a <u>Batson</u> challenge is itself a factual determination, and we have repeatedly upheld rulings made without additional reasoning. <u>See</u> <u>U.S. Xpress Enters., Inc. v. J.B. Hunt Transp., Inc.</u>, 320 F.3d 809, 814 (8th Cir. 2003) (concluding that the trial court engaged in "a full <u>Batson</u> analysis" where the objector made a <u>Batson</u> challenge, the proponent of the strike offered a race-neutral explanation, both parties were allowed to argue their positions, and the trial court granted the motion without making any specific findings, implicitly finding the proponent's reasons to be racially motivated); <u>see</u> <u>also</u> <u>Wainwright v. Witt</u>, 469 U.S. 412, 430 (1985) (upholding a state trial court's dismissal of a juror for cause and noting "that the judge was [not] required to announce for the record his conclusion that [the] juror . . . was biased, or his reasoning" because the finding was evident from the record).

We do not read the Supreme Court's most recent case addressing <u>Batson</u> to hold otherwise. <u>See</u> <u>Snyder v. Louisiana</u>, 128 S. Ct. 1203 (2008). In <u>Snyder</u>, the Court refused to presume that the trial court credited the prosecutor's representation that he struck the challenged juror based on the juror's demeanor because the trial court had made no determination concerning the juror's demeanor. <u>Id.</u> at 1209. But, a number of factors led the Court to that conclusion. First, the trial court in <u>Snyder</u> did not state

whether it based its ruling on the first proffered reason (claimed nervousness on the part of the juror), the second reason (other pressing time constraints–student teaching responsibilities), or on both, and the Court was unwilling to assume the trial court relied on the first reason when the Court found that the second reason did not stand up to scrutiny under the deferential standard. Id. at 1209, 1212. Notably, the Court applied the deferential standard to the second proffered reason, which it found lacking, even though the trial court made no findings concerning the second reason other than allowing the strike. Id. at 1209. Second, the Court rejected the second reason offered by the prosecutor, leaving the juror's alleged nervousness as the only potentially valid basis for the strike, and there was no evidence in the record that the prosecutor would have pre-emptively challenged the juror based on his nervousness alone. Id. at 1212. Third, the Court rejected the second reason for the strike because it was "highly speculative" and because the same reasoning would have applied with more force to specific white jurors, whom the prosecutor did not strike. Id. at 1211-12. Despite the reversal of the trial court in Snyder, the Court continues to "recognize[] that . . . determinations of credibility and demeanor lie peculiarly within a trial judge's province," and, "in the absence of exceptional circumstances, [the Court will] defer to the trial court." Id. at 1208 (internal marks omitted). In our case, both proffered reasons withstand scrutiny, as discussed in more detail infra, such that we are not left to surmise whether one of the two reasons alone would support the strike as non-discriminatory. There is no evidence here that the prosecutor's proffered reasons applied with greater force to white jurors who were not struck; in fact, the prosecutor used the same reasons–occupation and demeanor–to strike a white juror. In any event, Snyder was not clearly established law at the time of the state courts' rejection of Smulls' Batson claim and cannot provide the basis for habeas relief under § 2254(d)(1). See Williams, 529 U.S. at 412.

In a related context involving the dismissal of jurors for cause who are "substantially impaired" in their ability to impose the death penalty, the Supreme Court recently explained that "there is no requirement in a case involving the

-10-

<u>Witherspoon</u>-<u>Witt</u> rule that a state appellate court make particular reference to the excusal of each juror. It is the trial court's ruling that counts." <u>Uttecht</u>, 127 S. Ct. at 2228 (internal citations omitted). Here, by denying the <u>Batson</u> challenge, the trial court implicitly found that the prosecution's proffered nondiscriminatory reasons were credible. No further fact-finding was required. The absence of additional findings is certainly not a misapplication of clearly established Supreme Court precedent as required for relief under § 2254(d)(1).

Nor does the trial court's failure to make explicit findings relieve this court of its obligation to view the state trial court's findings as presumptively correct[3] or empower us to order the federal district court to reconstruct the record.[4] Prior to AEDPA, the presumption of correctness was contained in § 2254(d), which listed eight exceptions to the presumption. <u>See</u> 28 U.S.C. § 2254(d) (1994), <u>amended</u> <u>by</u> Antiterrorism & Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 104(4), 110 Stat. 1214, 1219 (1996). AEDPA's amendments to § 2254 "jettisoned . . . [the] situations which previously swept aside the presumption." <u>Valdez v. Cockrell</u>, 274 F.3d 941, 949 (5th Cir. 2001), <u>cert.</u> <u>denied</u>, 537 U.S. 883 (2002). "The presumption of correctness erected in its place at § 2254(e)(1), now simply provides that unless the petitioner can rebut the findings of fact through clear and convincing evidence, those findings of fact are presumed to be correct." <u>Id.</u>; <u>see</u> <u>also</u> <u>Miller-El I</u>, 537 U.S. at 358-59 (Thomas, J., dissenting) ("Section 2254(e)(1) does not, as its predecessor did, create exceptions to factual deference for procedural infirmities. . . . Section

---

[3]<u>Snyder</u>, which was a direct appeal from the Supreme Court of Louisiana, does not change the respect owed to state court findings as mandated by AEDPA. On review of a direct appeal, the Supreme Court is not bound by the presumption of correctness required by § 2254(e)(1).

[4]As recently noted by the Supreme Court, such a remand, more than a decade later, would be futile. <u>See</u> <u>Snyder</u>, 128 S. Ct. at 1212 ("Nor is there any realistic possibility that this subtle question of causation could be profitably explored further on remand at this late date, more than a decade after petitioner's trial.").

2254(e)(1) simply cannot be read to contain an implied sliding scale of deference.") (noting that the majority opinion does not appear to conflict with this view). Thus, regardless of the extent of the evidence considered by the state trial court, we may reject the trial court's factual findings only if those findings are proven incorrect "by clear and convincing evidence." § 2254(e)(1); see also Hall v. Luebbers, 341 F.3d 706, 713 (8th Cir. 2003) ("Each step of the Batson inquiry involves a factual determination entitled to a presumption of correctness unless overcome by clear and convincing evidence."), cert. denied, 541 U.S. 996 (2004). Our suggestions to federal trial judges that they are well advised to articulate their findings concerning the validity of the prosecutor's asserted race-neutral reasons, see, e.g., Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir. 1992) ("We strongly suggest . . . that trial judges [addressing a Batson challenge] make an on-the-record ruling stating their reasoning with appropriate references to the underlying facts as they determine them to be."), are, of course, not binding on state court judges. We therefore will presume the trial court's fact-findings to be correct unless Smulls can present "clear and convincing evidence" otherwise. § 2254(e)(1).

## B. AEDPA's "Contrary to Clearly Established Federal Law" Requirement

Smulls next claims that the state supreme court's analysis of the Batson claim is contrary to clearly established federal law because the supreme court conflated the second and third steps of the Batson analysis. In reviewing state court proceedings for compliance with federal law, we consider the entirety of the state proceedings. Even if the trial court made a legal error, the error does not support habeas relief if the state appellate court correctly applied federal law. See Boyd v. Newland, 467 F.3d 1139, 1144 (9th Cir. 2006) (giving deference to a California Court of Appeals decision that correctly applied Batson even though the trial court had applied a higher state court standard for making out a prima facie Batson claim), cert. denied, 127 S. Ct. 2249 (2007); see also Elem v. Purkett, 64 F.3d 1195, 1200-01 (8th Cir. 1995) (reviewing state appellate court findings on remand from the Supreme Court).

-12-

The Supreme Court of Missouri correctly articulated the Batson three-step standard, found that the prosecutor's proffered reasons concerning Ms. Sidney's occupation and demeanor were race neutral, and concluded that the trial court did not clearly err in overruling the Batson challenge. See Smulls, 935 S.W.2d at 14-15. Smulls focuses on the Supreme Court of Missouri's citation to Purkett in its discussion of the third Batson step to support his assertion that the court improperly conflated steps two and three. See id. at 15-16 (noting that "[a] legitimate reason for exercising peremptory challenges is not one 'that makes sense' but one 'that does not deny equal protection,'" quoting Purkett, 514 U.S. at 769, where the Court had explained why the Eighth Circuit had erred in holding the prosecution to too high of a burden at the second step). We do not construe the Supreme Court of Missouri's discussion or consideration of the issue as stopping at step two or inappropriately applying the step-two standard to step three. Step three requires balancing the defendant's prima facie case from step one against the race-neutral justifications offered in step two to determine whether the defendant has met his ultimate burden at step three of proving that the prosecutor's motives were in fact discriminatory. Although the Supreme Court of Missouri quoted from Purkett's discussion of the step-two analysis, the court concluded that even if it assumed that some of the prosecutor's reasons for the strike were nonsensical, that did not establish that the prosecutor's justifications were inherently pretextual, which is the defendant's burden at step three. See Rice, 546 U.S. at 338 (noting that a federal habeas court can grant a § 2254 petition based on Batson only if it was unreasonable for the state court to credit the prosecutor's race-neutral explanations); Bell-Bey v. Roper, 499 F.3d 752, 757-58 (8th Cir. 2007) ("[T]he trial court's conclusion [that] the state attorney's nondiscriminatory rationale was persuasive (without further argument [from the defense]) was not contrary to clearly established federal law. . . . [W]hen the trial court makes the necessary credibility determination, we defer to that ruling and there is 'nothing left to review.'" (quoting Miller-El I, 537 U.S. at 339-40)).

As we discussed above, the denial of a <u>Batson</u> challenge is itself a finding at the third step that the defendant failed to carry his burden of establishing that the strike was motivated by purposeful discrimination. <u>See</u> <u>Hernandez v. New York</u>, 500 U.S. 352, 364 (1991) ("In <u>Batson</u>, [the Supreme Court] explained that the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact . . . .") (plurality opinion); <u>Messiah v. Duncan</u>, 435 F.3d 186, 189 (2d Cir. 2006) (holding that the trial court fulfills its "duty to rule" on the <u>Batson</u> third-step analysis "by expressing a clear intention to uphold or reject a strike after listening to the challenge, the race-neutral explanation and the arguments of the parties"); <u>Hightower v. Terry</u>, 459 F.3d 1067, 1072 n.9 (11th Cir. 2006) (rejecting a claim that the state courts failed to apply the third <u>Batson</u> step and concluding that the trial court's rejection of the challenge was itself a step-three finding), <u>cert.</u> <u>denied</u>, 127 S. Ct. 2254 (2007). By finding that the trial court did not clearly err in accepting the prosecutor's reasons, the Supreme Court of Missouri properly applied the third step of the <u>Batson</u> analysis.

In a related argument, Smulls claims that the trial court violated clearly established federal law by placing an undue burden on the defendant to establish the race of each venireperson and then avoiding the <u>Batson</u> challenge when the defense failed to meet the allegedly imposed burden. However, it is evident from the record that the state trial court was informed that Ms. Sidney was the only black venireperson when it first rejected the <u>Batson</u> challenge. The defense represented to the court that she was the only black person in the qualified group of 30 venirepersons when it first challenged the strike and again when it renewed the challenge the following morning, and at no time did the prosecution ever dispute that fact. The record shows that when the trial court ruled on the <u>Batson</u> objection, it did so based on "what was presented to this Court," which included defense counsel's representation about the racial composition of the qualified venire. (Appellant's App. at 18.) In short, the trial court considered the challenge and the related circumstances and arguments, including its observations of Ms. Sidney, and made its ruling, a ruling it made four times in two

-14-

days. To the extent Smulls claims that the trial court violated federal law by placing too high a burden on the defendant to establish the race of the other venirepersons, we respectfully reject the claim.

Further, the defense was allowed to respond to the prosecutor's proffered reasons and argue that the stated reasons were pretextual. While the trial court did initially deny the motion for a mistrial following the prosecutor's proffered race-neutral reasons for striking Ms. Sidney, the trial court immediately allowed the defense ample opportunity to make its argument that the proffered reasons were pretextual. The trial court did not limit the defense. Rather, it allowed the defense to make the record it chose to make, considered the arguments, and then denied the motion. The defense then asked that the peremptory strike be disallowed, which the trial court overruled. The following day, the defense again raised the <u>Batson</u> challenge. The trial court allowed both parties to address the issue and supplement the record. The trial court once again denied the challenge, but only after once again listening to the arguments made by counsel. Given this extensive record, the trial court cannot be criticized for failing to afford the defense an opportunity to respond, nor can it be fairly criticized for failing to consider the relevant circumstances raised by the attorneys.

C.      AEDPA's "Unreasonable Determination of the Facts" Requirement

Smulls also claims that the Missouri courts' denial of his <u>Batson</u> claim involves an unreasonable determination of the facts based on the evidence contained in the record. The deference owed to the state trial court pursuant to § 2254(e)(1) includes deference to its credibility determinations. A federal court can only grant habeas relief if the state court's credibility determinations were objectively unreasonable based on the record. <u>See</u> <u>Rice</u>, 546 U.S. at 338-39. "Thus, a federal habeas court can only grant [a] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the <u>Batson</u> challenge." <u>Id.</u> at 338. "Moreover, . . . our deference to

-15-

trial court fact-finding is doubly great when considering <u>Batson</u> challenges because of the unique awareness [on the part of the trial court] of the totality of the circumstances surrounding voir dire." <u>Simmons v. Luebbers</u>, 299 F.3d 929, 942 (8th Cir. 2002) (internal marks omitted), <u>cert. denied</u>, 538 U.S. 923 (2003); <u>see also</u> <u>Uttecht</u>, 127 S. Ct. at 2224 (noting the deference due a trial court in assessing "the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors"); <u>Hightower v. Schofield</u>, 365 F.3d 1008, 1034-35 (11th Cir. 2004) (accepting the Georgia trial court's finding, without further elaboration, that the defendant failed to "establish purposeful discrimination" where the defendant provided no evidence to the trial court to discredit the prosecutor's proffered justifications, leaving the trial court free to accept the prosecutor's reasons at face value (internal marks and brackets omitted)), <u>vacated by</u> 545 U.S. 1124 (2005), <u>reinstated by</u> 459 F.3d 1067, 1072 (11th Cir. 2006).

Under AEDPA, it is not just the trial court's findings that are presumed to be correct. The presumption, codified pre-AEDPA in § 2254(d), applies to factual determinations made by the appellate court as well. <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981) (subsequent history omitted). The statute "makes no distinction between the factual determinations of a state trial court and those of a state appellate court." <u>Id.</u> at 546. As we noted in <u>Jones v. Jones</u>, 938 F.2d 838, 842-43 (8th Cir. 1991), "<u>Sumner</u> requires us to also consider whether the [appellate court] made any finding of fact regarding the prosecutor's peremptory challenges." <u>See also</u> <u>Weaver v. Bowersox</u>, 241 F.3d 1024, 1031 (8th Cir. 2001) (noting that factual findings made by state appellate courts are entitled to the same presumption of correctness as findings of state trial courts). The Supreme Court of Missouri considered the circumstances shown by the trial court record and concluded that the prosecutor's reasons were the type typically found to be race neutral and that the trial court did not clearly err in denying the challenge. The supreme court also noted that the prosecutor's strike of Ms. Sidney was supported by his strike of Ms. Dillard, a similarly situated white venireperson struck on the basis of her occupation as a postal worker and her

confrontational demeanor. In addition to the trial court's findings, these unanimous findings by the Supreme Court of Missouri are likewise entitled to substantial deference, and are presumed to be correct unless rebutted by clear and convincing evidence to the contrary.

Smulls points to evidence in the record that allegedly indicates that the prosecutor's proffered reasons were pretextual. Specifically, Smulls points out that Ms. Sidney worked as a manager in Monsanto Corporation's mail distribution department rather than as a postal service worker as allegedly characterized by the prosecutor. A close examination of the record reveals that Smulls overstates his case. For instance, the prosecutor recognized that Ms. Sidney worked for Monsanto when he first explained his reasons for striking her. He also noted that she worked in the mail department, which he equated with postal service workers who he asserted generally lack ambition. (See Appellant's App. at 14-15 ("[Ms. Sidney] indicated that she is a mail sorter for Monsanto Company. That she sorts mail for, I believe she said, 5,000 people. . . . It's been my experience in the nine years that I've been a prosecutor that I treat people who work as mail sorters and as mail carriers, letter carriers and people who work for the U.S. Post Office with great suspicion . . . .").) Thus, the prosecutor did not falsely state that Ms. Sidney was a postal service worker, but accurately recognized that she worked for Monsanto.

The prosecutor also compared Ms. Sidney to Ms. Dillard, a white juror whom he struck based on her mail-related occupation. The Supreme Court of Missouri found this comparison to support the trial court's determination that the prosecutor had a valid race-neutral justification for striking Ms. Sidney. Although Smulls points to differences between the two jurors, "similarly situated" for purposes of justifying the use of peremptory strikes does not require similarity in all respects. "[P]otential jurors are not products of a set of cookie cutters." Miller-El II, 545 U.S. at 247 n.6 ("None of our cases announces a rule that no comparison is probative unless the situation of the individuals compared is identical in all respects, and there is no reason to accept

-17-

one."). The two jurors are similar enough that we cannot say on this record that the prosecutor's stated reason–Ms. Sidney's occupation–was a pretext for racial discrimination.

In addition to Ms. Sidney's occupation, the prosecutor listed her demeanor, which he interpreted from a glare on her face and an irritated answer, as further justification for the strike. Smulls cites no Supreme Court case requiring that a prosecutor's justification based on demeanor must be supported by evidence on the record before the trial judge can accept the justification. In Rice, the trial court accepted the prosecutor's justification based on the challenged juror's demeanor (a rolling of the eyes in response to a question from the court) even though the court itself did not witness the negative demeanor. On appeal, the Ninth Circuit determined that the trial court unreasonably credited the prosecutor's justification for a strike where the claimed negative demeanor was not corroborated by the record. Collins v. Rice, 348 F.3d 1082, 1095-96 (9th Cir. 2003). In reversing, the Supreme Court held that "the most generous reading [of the record] would suggest only that the trial court had reason to question the prosecutor's credibility regarding Juror 16's alleged improper demeanor." Rice, 546 U.S. at 341. Where "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, . . . habeas review . . . does not suffice to supersede the trial court's credibility determination." Id. at 341-42.

Smulls also claims that the prosecutor lied when he said that he had previous problems with postal service workers serving on juries, when in fact a postal service worker in the case he specifically referred to voted to convict, even though the case ended in a hung jury. Regardless of whether the prosecutor lied or instead was merely mistaken about the postal service worker's actions in the specific prior case to which he referred, it was up to the trial court to judge his credibility and determine whether to accept his proffered reasons for striking Ms. Sidney. While this discrepancy disclosed by the later established record may give a reviewing court reason to question the prosecutor's justifications, it does not compel such a conclusion. "[T]he critical

question in determining whether a prisoner has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike." Miller-El I, 537 U.S. at 338-39. Typically, the decisive question is whether the judge should believe the prosecutor's race-neutral explanations. There is seldom much evidence on the issue, "and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" Id. at 339 (quoting Witt, 469 U.S. at 428).

From the perspective of the deference given to the state trial court in assessing the prosecutor's credibility, this case is indistinguishable from Rice and Hernandez. In Hernandez,[5] the prosecutor said he struck Spanish-speaking veniremembers because an interpreter would be used at trial, and he was afraid that Spanish-speaking jurors would not defer to the interpreter's translations. 500 U.S. at 356. The strikes resulted in the removal of several Latinos from the jury of a Latino defendant. Although the defendant argued that the prosecutor's reasons were merely an excuse for striking Latinos, the Supreme Court refused to overturn the state trial court's acceptance of the prosecutor's justification for the strikes or its ultimate determination that the prosecutor's strikes were not racially motivated. Id. at 369 ("[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (internal marks omitted)).

In Rice, the Ninth Circuit determined that a state court clearly erred in accepting the prosecutor's race-neutral justifications, in part because the prosecutor's reliance on

---

[5]Hernandez was a direct criminal review of the New York Court of Appeals' rejection of the defendant's Batson claim. 500 U.S. at 355. The respect owed to state court findings in the habeas context is greater than the deference owed them in a direct criminal appeal. Cf. Miller-El I, 537 U.S. at 359 n.4 (Thomas, J., dissenting) ("Hernandez's clear-error standard is less demanding of a criminal defendant than § 2254(e)(1) is of a habeas applicant.").

the juror's young age was contradicted by the record, which established that one of the stricken jurors was a grandmother, and also because the prosecutor originally relied on gender, an impermissible basis in itself. See 348 F.3d at 1094-95. Despite these misgivings about whether the prosecutor had a race-based motive for striking the jurors, the Supreme Court reversed the Ninth Circuit's rejection of the trial court's credibility assessment. "Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination." Rice, 546 U.S. at 341-42. The same is true here. While discrepancies in the record may raise a question about the prosecutor's motive, they are not so overwhelming in this case that they "leave us with a definite and firm conviction that a mistake has been committed." Hernandez, 500 U.S. at 370 (plurality opinion) (internal marks omitted). The state trial court's credibility determination concerning the prosecutor's stated reasons must stand on habeas review.

Smulls argues that the fact that the prosecution struck the only black juror establishes that the prosecutor's stated reasons were pretextual. That fact alone, however, when considered together with the record as a whole, does not provide the clear and convincing evidence necessary to rebut the presumption of correctness afforded to the state courts' determinations, particularly the state supreme court's conclusion that the prosecution's strike was race neutral. Cf. Miller-El II, 545 U.S. at 262-66 (holding that the state court's acceptance of the prosecutor's explanation for striking ten of the eleven qualified black venirepersons was shown to be erroneous by clear and convincing evidence, including the prosecution's use of the "jury shuffle," disparate venire questions posed to black and white jurors, comparison of similarly situated black and white jurors, and the admitted practice of the Dallas County Prosecutor's Office of removing minorities from juries). This case contains nowhere near the strong circumstantial evidence present in Miller-El II that compelled the Supreme Court to conclude that the trial court made an unreasonable determination of the facts when it upheld the ten peremptory strikes.

The purpose of <u>Batson</u> and its progeny is to insure that trial attorneys do not strike prospective jurors for unconstitutional reasons. The state trial court's ill-advised comments made on the second day do not make the prosecutor's proffered reasons any less race neutral, and they have no bearing on whether those reasons were asserted in good faith. <u>Cf. id.</u> at 252 (noting that it is the prosecutor's actual reason for the strike that is relevant in a <u>Batson</u> challenge, and the fact that the Court of Appeals could come up with a substitute reason to justify the strikes "does nothing to satisfy the <u>prosecutor[']s</u> burden of stating a racially neutral explanation for [his] own actions." (emphasis added)). We note that the prosecutor never wavered from the initial reasons he presented to the trial court. From the first time he was asked to justify the strike of Ms. Sidney, the prosecutor stated that he struck Ms. Sidney based on her occupation and her demeanor, reasons he also used to strike a white juror. The record supports the trial court's and the Supreme Court of Missouri's acceptance of these reasons, Smulls has failed to present clear and convincing evidence to the contrary, and the trial court's regrettable subsequent statements do not change that fact.

In summary, the state courts' <u>Batson</u> ruling was not contrary to and did not involve an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented to the state courts. We are not permitted to grant habeas relief to a state prisoner because we might have ruled differently on the <u>Batson</u> objection, nor do we sit as a court of initial review over state trial judges. Applying AEDPA's restrictive review provisions (both as to the law applicable and as to the facts found by the state courts), the district court correctly denied Smulls' § 2254 petition based on the <u>Batson</u> challenge. As for Smulls' <u>Batson</u>-related ineffective assistance of counsel claims, the original panel unanimously agreed that those claims were without merit, and we reinstate the panel opinion to the extent that it affirmed the dismissal of those claims. See <u>Smulls</u>, 467 F.3d at 1116 n.2.

III.

The district court's judgment denying Smulls' § 2254 petition is affirmed.


BYE, Circuit Judge, with whom SMITH, Circuit Judge, joins, concurring in part and dissenting in part.

The deferential standard of review called for by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) neither requires nor permits us to sacrifice fidelity to constitutional principles at the altar of federalism. Today the majority eschews this bedrock principle and deems the state trial court's flagrant disregard of Batson v. Kentucky, 476 U.S. 79, 93 (1986), constitutionally sound. In so doing, the court places its imprimatur upon a constitutionally flawed process which will ultimately lead to Herbert Smulls's death. Because I cannot condone the actions of the Missouri courts, I respectfully dissent from the decision affirming the denial of Smulls's Batson challenge. I concur in the majority's denial of his claim of ineffective assistance of counsel.

I

During jury selection at Smulls's trial, defense counsel objected to the prosecutor's exercise of a peremptory challenge to remove Margaret Sidney from the jury. Counsel identified Sidney as African-American and argued the prosecutor's challenge violated Batson. The prosecutor offered the following explanation for the challenge:

Judge, I made nine strikes. I did strike the juror Ms. Sidney who, I guess, for the record was a black female. My reasons for striking Ms. Sidney are based both upon what I observed during our voir dire and based upon my experience in trying criminal lawsuits, which has

exceeded 50 cases in this courthouse including several cases before this Court in the nine years that I have been a prosecuting attorney. My concerns with Ms. Sidney began yesterday. Ms. Sidney was very silent during all of the questioning. I observed at one point during my questioning concerning the death penalty a glare on her face as I was questioning that area. She was seated in the back row, I believe, yesterday. When I looked directly at her and asked that last row a question, she averted her eyes and wouldn't answer my question and wouldn't look at me. That made me very nervous. The only response I was able to get out of Ms. Sidney today was when I asked her about her occupation. At first she responded with what I though [sic] was a very irritated answer. She indicated that she is a mail sorter for Monsanto Company. That she sorts mail for, I believe she said, 5000 people. And her husband works for the post office. And I believe she listed him as a custodian. It's been my experience in the nine years that I've been a prosecutor that I treat people who work as mail sorters and as mail carriers, letter carriers and people who work for the U.S. Post Office with great suspicion in that they have generally – in my experience in many of the trials that I've had – are very disgruntled, unhappy people with the system and make every effort to strike back. In my experience as a prosecutor, in trying cases where I've had several cases and left mail people on the jury, had them result in a hung jury. The most recent of which was a murder case in this courthouse last September, State versus Dana Ruff (phonetically) where a mail carrier was the holdout for a hung jury in that case. I also have several in-laws who are employees of the postal department and even though they are somewhat relatives, I share the same opinion of them. So I treat them with great suspicion. When she glared at me and just her general attitude, which included her outfit – which yesterday, I believe, included a beret and today was a ball cap with sequins on it, I just felt that she wouldn't be a good states [sic] juror. Certainly, not a strong juror in the consideration of death, should we get to that part of the trial. And also I would point out for the Court that I struck juror number eight, Ms. Dillard. I struck her for the very same reason in that she is a letter carrier and works delivering mail. And I though [sic] her attitude was also confrontational. And I did not feel that her answers were ones that would give rise to me believing she would be a strong states [sic] juror. Ms. Dillard, I would point out, is a white female. And I struck her for virtually the same reasons. It's been my

experience that when I left postal workers on who seem to have an attitude, based on my interpretation, that I've had bad results. And that's why I struck her.

Appellant's App. at 14-16.

Without permitting any response from Smulls's lawyer, the trial court overruled the <u>Batson</u> challenge. Defense counsel persisted, however, and argued:

First of all, I've been a trial attorney as long as he has, trying as many cases as he has and I didn't detect any type of attitude from Ms. Sidney. Secondly, he said she remained silent during his questioning during the death qualification. He didn't ask her a direct question. Numerous jurors remained silent during his death question because he didn't ask them direct questions. Ms. Beeson. He didn't ask Ms. Uhlmansiek questions although he did strike her. Ms. Linn, who is a white female, she remained totally silent. I'm the only one who talked to her at all other than Mr. Copper asking her what municipality she lived in, but he did not strike her. So numerous jurors and the record will reflect that, remained silent during Mr. Waldemer's questioning. Once again today when he asked her about her occupation I did not detect any kind of animosity on her part. I think the clothing reasons are clearly pretextural [sic]. I think that there is a case where there was a juror struck on the basis of looking like what the prosecutor called a 'due debt.' And the Court found that to be pretextural [sic] and sent it back. That occurred in the City of St. Louis, but I don't have the name of the case. With regard to her being a postal worker, Mr. Waldemer has mentioned that they're at the bottom of the employment rung. I think a lot of postal workers make more money, because they're federal employees, than a lot of people who come in here for jury duty. He said he struck Ms. Dillard because she was a postal worker. She also indicated she knew the victim in this case, Florence Honickman. And to be perfectly honest, I would think that the state might have concerns that she wouldn't like Mrs. Honickman based on Mrs. Honickman's demeanor and based on comments that Mr. Waldemer made about Mrs. Honickman. So that could have very well been part of the reason for striking Ms. Dillard,

-24-

other than her being a postal employee.  So I feel that his reasons were pretextural [sic].

Id. at 16-18.

In a decision shorn of findings articulating any reasoned basis, the trial court overruled the Batson challenge.  The following morning, Smulls's attorney renewed the Batson challenge and the following colloquy occurred:

MS. KRAFT: Judge, I believe I stated on the record yesterday when I made my record that Ms. Sidney was the only black juror remaining out of the 30.

THE COURT: You made that statement.

MS. KRAFT: Okay.

THE COURT: You see, I have a problem.  I don't know what it is to be black.  I don't know what constitutes black.  And I never, in this Court, no matter what any appellate court may say, I never take judicial notice that anybody is black or that only one person or four persons or eight persons are black.  That to me is something that I don't think this Court is wise enough or any other appellate court is wise enough unless there is direct evidence as to who is black and who is white and who is orange and who is purple.  I do not under any circumstances in this division ever take judicial notice of the number of people who are black.  And I believe that's counsel's responsibility to prove who is black and who isn't or who is a minority and who isn't.  There were some dark complexioned people on this jury.  I don't know if that makes them black or white.  As I said, I don't know what constitutes black.  Years ago they used to say one drop of blood constitutes black.  I don't know what black means.  Can somebody enlighten me of what black is?  I don't know; I think of them as people.  I listened to the responses of Ms. Sidney.  I watched her attitude very briefly as it may have been, and I'm not going to sit here and say to you that Ms. Sidney is not black.  But I'm not going to make a judgment as to whether anybody else on the panel was, so in any event, I'm merely telling you that for the record. I'd rather not even discuss it on

-25-

the record.  But, in any event, I'm going to deny your motion for a mistrial on the basis stated.  Are we ready to proceed?

Id. at 26-28.

On appeal, the Missouri Supreme Court, without commenting on the absence of findings to support the trial court's decision, upheld the denial of the Batson challenge. The court concluded the trial court did not clearly err because "[r]easons such as these have been found to support a ruling that a trial court did not clearly err[,]" and "[e]ven assuming the prosecutor's reasons for challenging mail sorters and postal workers are non-sensical, this does not establish the reasons are inherently pretextual."  State v. Smulls, 935 S.W.2d 9, 15 (Mo. 1996) (en banc).

II

As the majority correctly notes, our review of Smulls's claims is governed by AEDPA, and we may not grant a writ of habeas corpus with respect to any issue decided by the Missouri courts unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1), (2).  The majority also correctly identifies Batson v. Kentucky, 476 U.S. 79 (1986), as clearly established federal precedent.  I part company, however, with the majority's application of these salutary precepts to the issues of this case.

The Equal Protection Clause of the United States Constitution prohibits using peremptory challenges to exclude jurors on the basis of race.  Batson, 476 U.S. at 89. To prove purposeful discrimination in the use of a peremptory challenge, a defendant must first make a prima facie case of racial discrimination.  If such a showing is made, the state must suggest a race-neutral explanation for the strike and if a race-neutral explanation is offered, the trial court must decide whether the party objecting to the

strike has proved purposeful discrimination.  Purkett v. Elem, 514 U.S. 765, 767 (1995); United States v. Jones, 245 F.3d 990, 992 (8th Cir. 2001).

Smulls argues the prosecutor's stated reasons were pretextual because they were contrary to or unsupported by the record.  He claims the prosecutor's characterization of Sidney as a "mail sorter" or "mail carrier" was erroneous because the record shows Sidney was a member of management at Monsanto, and, among other duties, supervised employees responsible for sorting and distributing mail.  Additionally, Smulls argues the prosecutor's claim that a previous jury had been hung by a postal employee is factually inaccurate.[6]

Both the trial court and the Missouri Supreme Court failed to analyze these factual disputes on the record.  The district court took note of the lack of findings but concluded the prosecutor was aware of Sidney's actual job description and, even though he was mistaken about his earlier trial, believed a postal worker voted against conviction.  Therefore, the district court concluded the Missouri courts' application of federal law was not unreasonable.

Smulls also argues the district court's rejection of his Batson challenge was erroneous because the trial court failed to make any factual findings to support the prosecutor's claim Sidney "glared" at him or acted "irritated" by the questioning.  According to Smulls, defense counsel disputed the prosecutor's alleged observations and the trial court should have resolved the dispute on the record.  Smulls also argues the side-by-side comparison of Sidney and venireperson Dillard was improper because Dillard knew the victim and was, therefore, not similarly situated.

Once again, neither the trial court nor the Missouri Supreme Court chose to address these arguments on the record.  The district court noted the lack of findings

---

[6]The state concedes the prosecutor's claim was inaccurate.

-27-

but rejected the arguments because defense counsel's disagreement "neither confirms nor denies that Ms. Sidney had a poor demeanor." The district court concluded the barren record did not make the trial court's decision or the Missouri Supreme Court's affirmance unreasonable. I disagree.

I am dismayed at the perfunctory and cavalier manner in which the trial court dismissed Smulls's Batson challenge. "In deciding whether the defendant has made the requisite [prima facie] showing, the trial court should consider all relevant circumstances." Batson, 476 U.S. at 96. We have emphasized the need to "make[] detailed findings on the record in support of a ruling on a peremptory challenge under Batson." Moran v. Clarke, 443 F.3d 646, 653 (8th Cir. 2006) (citing U.S. Xpress Enter., Inc., v. J.B. Hunt Transp., Inc., 320 F3d 809, 814 (8th Cir. 2003)). Such a view is entirely consistent with clearly established Supreme Court precedent stressing the importance for trial courts to carefully consider all evidence bearing on the issue. Batson, 476 U.S. at 96. Further, as to the issue of discriminatory intent, "Batson . . . requires the judge to assess the plausibility of [the prosecutor's] reason in light of all evidence with a bearing on it." Miller-El v. Dretke, 125 S.Ct. 2317, 2331-32 (2005) (citation omitted). "In deciding if the defendant has carried his burden of persuasion, a court must undertake a 'sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" Batson, 476 U.S. at 93 (quoting Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 266 (1977)). The majority's invocation of AEDPA's deferential standard of review does not alter the fact that nothing of the sort occurred in this instance. Because the trial record is bereft of reasoning, any meaningful review by our court is impossible.

Any doubt about the impact the failure to make findings has on our ability to conduct meaningful appellate review is confirmed by the Supreme Court's recent decision in Snyder v. Louisiana, 128 S. Ct. 1203 (2008). There the Court refused to "presume that the trial judge credited the prosecutor's [asserted reasons for striking a juror]" because no record findings had been made. Id. at 1209. The majority's attempt

-28-

to blunt the effect of <u>Snyder</u> is singularly unpersuasive. It argues <u>Snyder</u> is distinguishable because the prosecutor offered two reasons for striking a juror and the record did not reveal whether the trial court credited one, the other, or a combination of both. The distinction is irrelevant. <u>Snyder</u> teaches that an appellate court "cannot presume" a trial court correctly analyzed a <u>Batson</u> challenge when it is impossible to divine the court's reasoning. <u>Id.</u> In <u>Snyder</u>, the prosecutor offered two reasons for striking the juror – nervousness and pressing time constraints, <u>id.</u> at 1208, and the trial court rejected a <u>Batson</u> challenge without explanation, <u>id.</u> at 1209. The Supreme Court concluded it was unable to conduct any meaningful review of the first proffered reason (nervousness) because "the record does not show that the trial judge actually made a determination concerning [the juror's] demeanor." <u>Id.</u> at 1209. Unlike today's decision, the Court recognized that a paucity of findings by the trial court made judicial review impossible, and refused to engage in the perverse reasoning enshrined by today's decision which concludes an unreasoned, unexplained denial implies a deliberative process.

The majority attempts to avoid <u>Snyder</u> by arguing it need not decide in this case what reasons the trial court credited because all would justify the challenge. This argument ignores <u>Snyder</u>. The issue is not whether the proffered reason, if verified, would withstand a <u>Batson</u> challenge. Indeed, had the Court been able to confirm the juror in <u>Snyder</u> appeared nervous, the trial court's denial of the challenge would likely have been affirmed. Rather, the inquiry is whether the trial court found the proffered reasons had a basis in fact. If an otherwise adequate reason has no factual basis, the strike is pretextual. The record here reflects the competing views offered by the prosecution and defense but is of no assistance in determining which was factually correct. In adhering to these principles, I refuse to ignore the lack of findings and the trial court's stubborn refusal to apply <u>Batson</u>.

Finally, the majority brushes aside <u>Snyder</u> by finding it was not clearly established law at the time of the state courts' decisions. Nothing in <u>Snyder</u>, however,

suggests the Court intended to establish new standards for reviewing Batson challenges. Thus, Snyder changed nothing; it simply recognizes the unremarkable principle that an appellate court cannot review a decision or findings a trial court never made.

Here the record conclusively establishes the trial court refused to make findings and engage in the evaluative process anticipated by Batson and its progeny. Initially, the court denied the challenge without affording defense counsel an opportunity to rebut the racially-neutral reasons offered by the prosecutor. Later, in unequivocal language, the court refused to consider the racial composition of the jury pool, issuing a direct challenge to any appellate court possessed of the temerity to suggest it should. Finally, the dearth of reasoning reflected in the trial court's decision leaves nothing to review. See Hardcastle v. Horn, 368 F.3d 246, 259 (3d Cir. 2004) ('[S]ome engagement with the evidence considered is necessary as part of step three of the Batson inquiry,' and requires 'more than a terse, abrupt comment that the prosecutor has satisfied Batson.') (quoting Riley v. Taylor, 277 F.3d 261, 290-91 (3d Cir. 2001) (en banc)); Barnes v. Anderson, 202 F.3d 150, 156 (2d Cir. 1999) (ordering a new trial where the trial court denied a Batson challenge "without explicit adjudication of the credibility of the non-movant's race-neutral explanations for the challenged strikes."); and United States v. Hill, 146 F.3d 337, 342 (6th Cir. 1998) (remanding where "the record . . . indicates nothing about the district court's thought processes . . . apart from its abrupt conclusion . . . that the prosecutor's asserted justification outweighed [the defendant's] showing under the totality of the circumstances."). For these reasons, I would reverse the district court's denial of habeas relief.

My disapproval of today's decision is not based solely upon what the trial court failed to say on the record. Rather, I would also reverse because the trial court expressly refused to recognize and assess all relevant circumstances as required by clearly established federal law. When defense counsel attempted to establish for the record Sidney was the only black juror remaining in the jury pool, the trial court

inexplicably refused to acknowledge or consider the racial composition of the jury pool. "I don't know what constitutes black. And I never, in this Court, no matter what any appellate court may say, I never take judicial notice that anyone is black or that only one person or four persons or eight persons are black." Instead of considering the composition of the jury pool, as mandated by Supreme Court precedent, the trial court imposed upon the defendant an unprecedented, if not impossible, burden:

> That to me is something that I don't think this Court is wise enough or any other appellate court is wise enough unless there is direct evidence as to who is black and who is white and who is orange and who is purple. I do not under any circumstances in this division ever take judicial notice of the number of people who are black. And I believe that's counsel's responsibility to prove who is black and who isn't or who is a minority and who isn't.

Appellant's App. at 27.

I fail to comprehend how a trial court, faced with a <u>Batson</u> challenge, can purport to fulfill its obligation to properly evaluate the merits of such a claim without taking the race of prospective jurors into account. Further, a trial court may not avoid <u>Batson</u> by demanding the proponent of the challenge meet a burden of proof which finds no support in Supreme Court precedent. The trial court stated, in unmistakable language, it would not analyze Smulls's <u>Batson</u> challenge and dared any appellate court to hold it accountable. Remarkably, the majority shrinks from the challenge, concluding the trial court's clearly expressed contempt for constitutional principles proves it found the prosecutor's reasons credible. The evidence is unshakable – the trial court abdicated its responsibilities under <u>Batson</u> and I find no comfort in the majority's difficult reasoning. I will not align myself with a view that brushes aside the repugnant treatment of Smulls's <u>Batson</u> challenge and excuses the trial court's conduct and comments as justified, albeit "ill-advised," expressions of "frustration."

-31-

The trial court's actions and comments are indicative of a deeper problem. The trial court's initial failure to afford defense counsel an opportunity to respond to the prosecutor's racially-neutral reasons, the complete lack of findings, and the trial court's refusal to consider the race of prospective jurors absent "direct evidence," combine to demonstrate the court was openly hostile towards the Batson challenge and unwilling to engage in the sensitive inquiry into circumstantial and direct evidence as required. See U.S. Xpress Enter., Inc., 320 F.3d at 814 n.4 (noting under certain circumstances the "lack of specificity in a trial court record to demonstrate compliance with the Batson analysis may require remand for further findings."). Thus, our court is not constrained by the normal presumption of correctness in favor of the trial court. Nor must we overlook the Missouri Supreme Court's resort to judicial alchemy in transforming the trial court's refusal to consider the claim into a reasoned basis for affirming. Today's decision incorrectly affirms the state's privation of Smulls's constitutional rights and renders illusory the already tenuous protections afforded under Batson.

III

Because the trial court refused to consider all relevant circumstances as required by clearly established federal law, its unreasoned and unexplained decision cannot be accorded the normal presumption of correctness. Moreover, the Missouri Supreme Court's conclusion the trial court acted properly was an unreasonable application of clearly established federal precedent. To hold otherwise renders our role a sham and I refuse to accept an interpretation of appellate review which relegates us to the role of a legal rubber stamp. Therefore, I respectfully dissent and would reverse the district court's judgment denying Smulls's petition for habeas corpus.

_____