TJOFLAT, Circuit Judge:
Petitioner John Washington Hightower is a Georgia prison inmate awaiting execution for murder.[1] On August 6, 1999, the United States District Court for the Middle District of Georgia denied his application for writ of habeas corpus under 28 U.S.C. § 2254, and, on April 12, 2004, we affirmed its decision. Hightower v. Schofield, 365 F.3d 1008 (11th Cir.2005).[2] Hightower thereafter petitioned the Supreme Court for certiorari review. One of the issues his petition raised was whether the state trial court erred in rejecting his claim that the prosecutor’s peremptory challenges of black jurors violated the Bat-son rule. See Batson v. Kentucky, 476 *1069 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[3] The Court granted Hightower’s petition, vacated our judgment, and remanded the case “for further consideration in light of’ Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). Hightoiver v. Schofield, — U.S. -, 125 S.Ct. 2929, 2929-30, 162 L.Ed.2d 863 (2005). We conclude that Miller-El does not counsel a decision contrary to the one we reached in Hightower v. Schofield, and therefore adhere to that decision.
Why Miller-El does not control our decision becomes clear when one considers how Miller-El reached the Supreme Court and how Hightoiver v. Schofield came to us. In Miller-El, after the Texas Court of Criminal Appeals affirmed the trial court’s determination that the prosecutor’s peremptory challenges of black jurors were not racially motivated, Miller-El petitioned the United States District Court for the Southern District of Texas for habeas relief — to review the court of criminal appeals’ Batson decision.[4] Miller-El, 125 S.Ct. at 2323. Instead of requesting the district court to review that decision on the basis of the record created before the Texas trial judge, Miller-El asked the court to augment that record to consider other evidence, including juror questionnaires and juror information cards. Id. at 2334 n. 15. The State had no objection; the district court[5] therefore convened an evidentiary hearing to consider the additional evidence. Id. The court rejected Miller-El’s Batson claim, choosing to defer to “the experience of the trial court judge in evaluating the demeanor of each juror and the prosecutor in determining purposeful discrimination.” Miller-El v. Johnson, No. Civ. 3:96-CV-1992-H, slip. op. at 2, 2000 WL 724534 (N.D.Tex.2000) (mem.) (unpublished). Miller-El appealed, and the Fifth Circuit affirmed. Miller-El v. Dretke, 361 F.3d 849, 862 (5th Cir.2004). Of relevance to the case before us, the court of appeals rejected the petitioner’s arguments that “the ... similarity between non-black veni-re members who were not struck by the prosecution and six blacks who were” and the prosecutor’s “disparate questioning with respect to venire members’ views on the death penalty and their ability to impose the minimum punishment” constituted circumstantial evidence of the prosecutor’s intent to discriminate against the black members on account of their race. Id. at 854-55.
*1070 The Supreme Court disagreed with the Fifth Circuit’s assessment of the evidence contained in the record, i.e., the record before the Texas trial judge and the evidence Miller-El presented to the district judge with the State’s consent; the Court concluded that “when the evidence on the issues [the petitioner] raised is viewed cumulatively its direction is too powerful to conclude anything but [racial] discrimination.” Miller-El, 125 S.Ct. at 2339.
In the case at hand, we did not decide Hightower’s Batson claim on the basis of an augmented record, as the district court, the court of appeals, and the Supreme Court did in Miller-El; rather, we were, and are post -Miller-El, limited to the evi-dentiary record developed in the state trial court during jury selection and the trial court’s ruling,[6] Hightower’s and the State’s briefs to the Supreme Court of Georgia (with respect to the Batson claim), and that court’s opinion (again, with respect to the Batson claim).
The procedural history of this case is illustrative. After the Georgia Supreme Court affirmed his convictions and death sentences, Hightower petitioned the state superior court for a writ of habeas.corpus. Among his claims was the Batson claim he had presented to the supreme court in appealing his convictions. The superior court declined to entertain the Batson claim, citing Gunter v. Hickman, 256 Ga. 315, 348 S.E.2d 644 (Ga.1986), which held that issues raised in a defendant’s direct appeal of his conviction cannot be reliti-gated on collateral attack, in a habeas corpus proceeding, see Gunter 256 Ga. at 316, 348 S.E.2d at 644. After the superior court denied relief (on all of the petition’s claims), the Georgia Supreme Court denied Hightower’s application for probable cause to appeal, and the Supreme Court denied his petition for a writ of certiorari, Hightower v. Thomas, 515 U.S. 1162, 115 S.Ct. 2618, 132 L.Ed.2d 860 (1995).
Having exhausted his state remedies, Hightower filed the instant habeas petition. The petition contained several claims, including the Batson claim now under consideration pursuant to the Supreme Court’s mandate. In his petition and supporting memoranda, Hightower presented his Batson claim as he had presented it earlier in his brief to the Georgia Supreme Court on direct appeal, but he added an argument he had omitted from his brief to the supreme court. He contended that if the district court compared the prosecutor’s questions to the white jurors with those put to the black jurors, or vice versa, and the respective jurors’ answers to those questions, it would become apparent that the prosecutor, in exercising his peremptory challenges, was discriminating against the black jurors because of their race. The district court ignored this additional argument; it denied Hightower’s Batson claim with these words:
Petitioner has easily satisfied the first two prongs of his prima facie burden under Batson; the only disputed issue is whether the totality of the circumstances raised an inference that the prosecutor peremptorily struck certain jurors because of their race. The trial court, having the best opportunity to view the prosecutor’s demeanor and determine his credibility, found the prose *1071 cutor’s explanations to be credible. The trial court also found there to be a race-neutral basis for all of the prosecutor’s peremptory challenges of black prospective jurors. The Georgia Supreme Court affirmed the trial court’s evaluation. This Court cannot say that the Georgia Supreme Court’s determination was unreasonable or contrary to Batson or any other Supreme Court case within the meaning of the [Antiterrorism and Effective Death Penalty Act], Accordingly, Petitioner is not entitled to relief on this basis.[7]
We analyzed Hightower’s Batson claim in the same fashion, and concluded, as the district court did, that “Hightower never provided the [state trial] court with any evidence tending to discredit the persuasiveness of the prosecutor’s stated reasons for striking black jurors.”[8] Hightoioer v. Schofield, 365 F.3d at 1035.
Hightower contends that Miller-El required the district court, and this court, to entertain the argument he presented to the Georgia Supreme Court as well as the additional argument presented to the district court — -that the comparison mentioned above of the prosecutor’s handling of the white and black jurors compels the inference that the prosecutor exercised his peremptory challenges on racial grounds. In effect, he wants to re-brief his appeal to the Georgia Supreme Court. We assume that he intended to do just that when he included his Batson claim in his habeas petition to the state superior court. The superior court rejected his attempt; the supreme court had adjudicated the claim, and state procedural law precluded him from relitigating it on collateral attack. The Georgia Supreme Court effectively agreed when it denied Hightower’s application for probable cause to appeal.
The net effect of these rulings is that if Hightower wants the federal courts to entertain an argument he could have made in the Georgia Supreme Court but did not, he must establish cause for his counsel’s failure to present the argument and resulting prejudice. See Francis v. Henderson, 425 *1072 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976). He has demonstrated neither. Although his habeas petition to the district court alleges that his lawyers denied him effective assistance of counsel, it does not allege that counsel were ineffective in the Georgia Supreme Court for failing to advance his comparisons of black jurors struck by the prosecutor to white jurors accepted by the prosecutor.
We have considered Miller-El in the context of the instant case. We conclude that it does not change our disposition of Hightower’s Batson claim.[9] Our opinion in Hightower v. Schofield is accordingly reinstated.
SO ORDERED.

. Hightower was convicted in 1988 of murdering his wife and two step-daughters the year before. He was sentenced to death for each killing.

. Our opinion in Hightower describes High-tower's criminal acts and the procedural history of the case — in state and federal court.

.In Batson, the Supreme Court held that the Equal Protection Clause of the 14th Amendment forbad the State from exercising peremptory strikes in a racially discriminatory manner during jury selection in a criminal prosecution. The Court established a three-part mechanism for establishing such discrimination, which the Court has summarized as follows:
Under our Batson jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a raceneutral explanation (step two). If a raceneutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful discrimination.
Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770-71, 131 L.Ed.2d 834 (1995).

. Miller-El's petition sought relief on other constitutional claims as well. Miller-El, 125 S.Ct. at 2323. None are relevant here.

. The district court referred Miller-El's petition to a magistrate judge. After hearing the petitioner's claims, the magistrate judge issued a report and recommendation, recommending that the district court deny relief. Miller-El v. Johnson, No. Civ. 3:96-CV-1992-H, slip. op. at 1, 2000 WL 724534 (N.D.Tex. 2000) (mem.) (unpublished). The court adopted the magistrate judge’s recommendations and findings, with modifications not relevant here. Id. at 2.

. In Miller-El, the Court, addressing the propriety — under 28 U.S.C. § 2254(d)(2) — of considering evidence not presented to the trial judge when ruling on the petitioner’s Batson objection, stated that it was reaching no decision about whether the limitation on evidence in § 2254(d)(2) is waiveable. Miller-El, 125 S.Ct. at 2334 n. 15. Section 2254(d)(2) instructs federal habeas courts to consider only "the evidence presented in the State court proceeding," i.e., the proceeding in which the Batson objection is raised.

. In determining whether the Georgia Supreme Court’s rejection of Hightower’s Bat-son claim should be sustained, the district court focused on what was before the Georgia Supreme Court. In other words, to the extent that Hightower's petition contained an argument that Hightower did not present to that court, the district court ignored the argument. The Rules Governing Section 2254 Cases in the United States District Courts accommodate this policy of limiting the district court's examination of the state high court’s decision to what was before the high court. If the district court orders the State to respond to a habeas petition, Rule 5(c) requires the State to attach to its answer "parts of the transcript that the [State] considers relevant.” Where, as here, a Batson claim is involved, the State must attach the transcript of the portions of the trial dealing with jury selection (and the Batson objection). The State provided the entire transcript of the jury selection in this case. Rule 5(d) also requires the State to attach to its answer the briefs the petitioner and the State submitted to the state appellate court, and that court’s "opinions and disposi-tive orders” relating to the petitioner's claim(s). The State provided the district court with these materials in this case. In sum, the district court, in examining, and denying, Hightower's Batson claim, relied on transcript of the jury selection, the parties’ briefs to the Georgia Supreme Court, and that court’s dispositive opinion.

. The only evidence Hightower attempted to present to the trial court in support of his Batson objection came in the form of a newspaper article, which purportedly showed that the prosecutor had authored a memorandum detailing a scheme to exclude black persons from juries. The trial court excluded the newspaper article from the record, on the ground that it had not been authenticated. We are bound by that ruling, and, as such, we do not consider the article as part of the record before the Georgia courts for the purposes of our review under § 2254(d).

. Although Miller-El involved only the application of § 2254(d)(2), Miller-El, 125 S.Ct. at 2325, the dissent contends that we should grant Hightower's writ of habeas corpus on the ground that the Georgia courts' rejection of Hightower’s Batson claim constituted a decision "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law” under § 2254(d)(1). See post, at 1073. The dissent argues that the state courts rendered such a decision because the trial court, and the Georgia Supreme Court on appeal, failed to carry out Batson’s third step in that they failed to find credible the prosecutor's race-neutral explanations for striking black jurors. See id..; see also Rice v. Collins, - U.S. -, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006) ("Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor .... ” (citations and internal quotation marks omitted)). In so doing, the dissent focuses on the trial court's language in overruling Hightower's Batson objection, in which it stated only that, "as to each individual strike, the State has presented an articula-ble nonrace related reason for striking the prospective juror.”
The dissent fails to recognize, however, that a trial court's dispositive ruling may contain implicit findings, which, though unstated, are necessary to that ruling. See United States v. $242,484.00, 389 F.3d 1149, 1154 (11th Cir.2004) (en banc) ("[W]e and other federal appellate courts have 'inferred from a district court's explicit factual findings and conclusion implied factual findings that are consistent with its judgment although unstated.’ "); see also 9A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure, § 2579 (2d ed. 1995) ("In some cases if the court fails to make a finding on a particular fact it has been assumed ... that it impliedly made a finding consistent with its general finding.”). In such cases, we make "the common sense judgment that material factual issues were resolved by the [trial] court in favor of the judgment when it was reasonable for that court to [have] do[ne] so in light of the evidence.” $242,484.00 at 1154-55. We have invoked (albeit tacitly) this pi'inciple in two Batson appeals, United States v. Cure, 996 F.2d 1136 (11th Cir.1993), and United States v. David, 844 F.2d 767 (11th Cir.1988), in which we upheld a district court's overruling of a Batson objection even though the district court did not explicitly find the prosecutor’s race-neutral explanations to be credible. See Cure, 996 F.2d at 1138-39; David, 844 F.2d at 769.
In this case, the trial court, after assuming that Hightower had made out a prima facie case of racial discrimination, expressly found that the prosecutor had provided an "articula-ble, nonrace related reason” for each strike, and overruled Hightower’s Batson objection. The trial court's overruling of Hightower's Batson objection would have defied logic had the court disbelieved the prosecutor’s race-neutral explanations. We may therefore make "the common sense judgment” — in light of defense counsel's failure to rebut the prosecutor’s explanations and the trial court’s ultimate ruling — that the trial court implicitly found the prosecutor's race-neutral explanations to be credible, thereby completing step three of the Batson inquiry.