TRAXLER, Chief Judge,
concurring:
I concur in the majority opinion. The West Virginia state court’s rejection of Watkins’ post-conviction claim-that the state prosecutor, Brian Parsons, failed to disclose an alleged, exculpatory “lack-of-fear” statement made by the victim, Mike Zimm, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) — was not an unreasonable one in light of the evidence presented in the state court proceedings.
Watkins alleged in his state habeas petition that Parsons told his trial counsel, James Adkins, that Zimm had told Parsons prior to trial that he was not afraid of Watkins during the attempted robbery. In other words, Watkins alleged that Parsons admitted to Adkins after the trial that an exculpatory statement was made by Zimm prior to the trial. In the written response to the petition, Parsons denied Watkins’ allegation. Watkins did not call either Zimm or Parsons as a witness at the evi-dentiary hearing in state court. Watkins called Adkins as his sole witness, but Adkins did not testify that Parsons admitted to him that Zimm made the alleged Brady statement prior to trial or, for that matter, after trial. In sum, Watkins failed to elicit testimony or present other evidence that supported his Brady allegation.
After the hearing, the state court issued a 17-page written opinion addressing Watkins’ habeas claims, including his Brady claim. The opinion contains explicit factual findings -and conclusions. But not surprisingly, the state court did not find that Zimm made the alleged Brady statement to Parsons. The state court did not find that Parsons admitted to Adkins that Zimm made the alleged Brady statement to him. And the state court did not find that Parsons had knowledge of any such Brady statement prior to Watkins’ trial. Consequently, the state court did not address the question of whether the alleged but unproven statement would have been *645 material for Brady purposes if Zimm had made it prior to trial.
On federal habeas review, we are not at liberty to rewrite state court findings of fact, or imply additional ones, in a manner that is unsupported by the evidence in the state court record and inconsistent with the state court’s reasonable rejection of a constitutional claim. We must give deference to the state court’s ultimate and reasonable adjudication of the claim, and we must give the state court the benefit of the doubt when doing so. In this case, that deference is easily given. The state court did not find the existence of a Brady statement and the record does not compel that we do so.
I. The State Habeas Proceedings
A. The State Habeas Allegations
In his state habeas petition, Watkins alleged the following claim as his eleventh ground for relief:
[T]he State of West Virginia failed to inform the Defendant that the prosecuting witness/alleged victim [Zimm] had told them that he was not afraid of the Defendant.
J.A. 181. Elaborating upon the basis for this allegation, Watkins represented that his trial counsel, James Adkins, had:
provided a memorandum to [state] habe-as counsel indicating that he was present during a pre-hearing conversation with the Assistant Prosecuting Attorney who tried th[e] case who allegedly uttered that the victim, Mike Zimm told him that he was never afraid and the APA responded if that was the case then they should stop prosecuting at that time.
Id. (emphasis added). “If that is true and the case,” Watkins asserted, “then the State of West Virginia failed to provide that exculpatory evidence to [him].” Id.
In its written response to Watkins’ ha-beas petition, the state agreed that APA Parsons had discussed with Zimm prior to trial the element of fear necessary to obtain a conviction for attempted robbery under state law, but denied that Zimm made the alleged exculpatory lack-of-fear statement to Parsons during that pretrial discussion. According to Parsons’ response:
[I] spoke with ... Mr. Zimm on at least two occasions prior to the trial of the matter ... as a part of the trial preparation process. I recall having a conversation with Mr. Zimm about the definition of the word “fear” as it applied to the legal elements requiring proof in the trial of the respondent. Mr. Zimm did not state that he was “never afraid”, but rather he sought a better understanding of what fear meant in the context of this case. (The Court should understand that a certain amount of bravado existed as to the relationship between counsel and Mr. Zimm and a reluctance to express fear months after an incident is natural between two men.) I did, however, inform Mr. Zimm that if the element of fear did not exist the case could not be proven at trial. I believe this to be an accurate statement of the law and at no time did counsel pressure, suggest or influence Mr. Zimm to testify one way or the other. Mr. Zimm’s trial testimony was consistent with his statement given the day of the crime and in no way exculpatory.
J.A. 303-04 (emphasis added). Parsons’ written account of this pretrial conversation, including his explicit denial that Zimm told him during that conversation that he was not afraid at the time of the attempted robbery, is uncontroverted.
B. The Omnibus Evidentiary Hearing The state habeas court held an omnibus evidentiary hearing, providing Watkins the opportunity to prove his allegation. Watkins did not do so.
*646 Watkins did not call Zimm or Parsons as a witness to substantiate his allegation that Zimm made the lack-of-fear statement to Parsons prior to trial. As a result, the state court did not hear from the only two witnesses who had first-hand knowledge of the pretrial conversation that had taken place between them.
Watkins did call his trial counsel Adkins as a witness, presumably to substantiate his allegation that Adkins had “provided a memorandum to [state] habeas counsel indicating that he was present during a pre-hearing conversation with [Parsons] ... who allegedly uttered that [Zimm] told him never afraid.” J.A. 181. But Adkins did not do so. Adkins’ that he was testimony regarding the issue was as follows:
Q: [by State Habeas Counsel]. [W]e have a contention in ... this habeas proceeding, whereby it’s alleged that Mr. Parsons made some comments to the effect that Mr. Zimm had told him that he wasn’t afraid during this whole incident. Were you ever present when Mr. Parsons spoke about that?
A: I don’t recall that.
Q: Were you ever present in Judge Hatcher’s courtroom at a time when it was perhaps yourself, Mr. Parsons, Mallory — I think her name was Farris — the court reporter, and a client of yours named Grasty when Mr. Parsons suggested that Mr. Zimm had told him he wasn’t afraid of Mr. Watkins?
A: I believe so, and I believe I may have made a contemporaneous note and either placed it in the file or ... I think I might have given it to you.
Q: Yes, sir. Do you recall what that— what was said at that time?
A: My contemporaneous note would probably be more accurate than my memory.
Q: Okay. Do you have any independent recollection of that conversation?
A: Something to the effect that — something to the effect that — yes, we were at another hearing, and Mr. Parsons had stated something to the effect that Mr. Zimm might not have been scared of Mr. Watkins on that — on the date of the alleged robbery.
Q: Is that what Mr. Parsons — as far as you recall, — you said your recollection was fuzzy on some of this, but as far as you recall, is that what was said?
A: Like I said, I believe I made a contemporaneous note and retained a copy in my file. And I think when I was aware that you were handling this on a habeas, I think I might have provided you with a copy of it.
Q: Do you recall who was present at the time that it was stated?
A: Other than me and Mr. Parsons, no.
Q: Did you — do you recall responding at that time? Did you say anything?
A: No. I was out of the case at that point in time.
J.A. 194-96 (emphasis added). Watkins did not call any of the other persons who were present during this post-trial conversation, and he did not introduce into evidence the “contemporaneous note” that Adkins repeatedly referenced during his testimony.[1]
*647 Accordingly, the evidence presented in the state court proceeding in support of Watkins’ “lack-of-fear” claim consisted of:
(1)Parsons’ agreement (in the written response) that he had a pretrial conversation with Zimm about the element of fear that did not include the alleged lack-of-fear statement by Zimm; (2) Adkins’ testimony that he did not recall Parsons making “comments to the effect that Mr. Zimm had told him that, he wasn’t afraid during th[e] incident,” J.A. 194; and (3) Adkins’ sole “independent recollection of that conversation,” which was that Parsons “had stated something to the effect that 'Mr. Zimm might not have been scared of Mr. Watkins ... on the date of the alleged robbery,” J.A. 195, which is more opinion than fact and says nothing about when Parsons developed this belief.[2]

C. The State Habeas Decision

In its decision denying habeas relief, the state court made the following findings of fact:
(1) “[Djuring trial, [Mr. Zimm] testified that he was afraid of the petitioner based upon what the petitioner said in Mr. Zimm’s store and upon the petitioner’s appearance.”
(2) “Mr. Zimm’s trial testimony was consistent with the statement he gave to police at the time of the incident.”
(3) “[A]t some time after the trial of this matter, trial counsel was told that Mr. Zimm said he was not ‘afraid’ at the time of the incident at issue.
(4) “Assistant Prosecuting Attorney Brian Parsons, esq. discussed with Mr. Zimm the definition of the word ‘fear’ as it applied to the elements of the crime at issue, and that Mr. Parsons informed Mr. Zimm that if the element of fear did not exist, then the case could not be proven at trial.
(5) “The discovery provided to the defense did not contain any reference to Mr. Zimm’s alleged statement that he was not ‘afraid’ or to the above described conversation between Mr. Parsons and Mr. Zimm.”
J.A. 211 (emphasis added).
With regard to Zimm’s alleged “lack-of-fear” statement, therefore, the state court did not find that Zimm “had told [Parsons] *648 that he was not afraid of the Defendant,” as Watkins had alleged. J.A. 181. Nor did it find that Adkins overheard Parsons “utter[ ] that ... Zimm told him that he was never afraid,” as Watkins had also alleged. J.A. 181. The evidence presented at the hearing did not warrant either finding.
With regard to the element-of-fear conversation that Parsons agreed had taken place between him and Zimm, the state court’s description of that conversation likewise did not include a finding that Zimm’s alleged lack-of-fear statement was a part of it. Moreover, the state court continued to draw quite an important distinction between the two things. Although the court referred to the element-of-fear conversation as the conversation that it had just described, the court continued to refer to the alleged, lack-of-fear statement as just that — an allegation.
The state court’s conclusions of law also do not indicate that the state court implicitly found that the .pretrial conversation included the alleged lack-of-fear statement.
(1)“The Court CONCLUDES that the State has an obligation to disclose to the defendant favorable impeachment or exculpatory [evidence] that is within its knowledge”
(2) “The Court CONCLUDES that the State’s alleged failure to inform defense counsel of the conversation between Mr. Parsons and Mr. Zimm regarding the requirement of ‘fear’ did not violate the dictates of Brady v. Maryland.”
(3) “Additionally, the Court CONCLUDES that Mr. Parson’s statements to Mr. Zimm with regard to the element of ‘fear’ were an accurate way to describe elemental requirements to a lay person/witness and that there is no evidence that Mr. Parsons suggested or improperly influenced Mr.- Zimm’s testimony.”
J.A. 213-14 (emphasis added). Thus, the state court — having not found that Zimm made the alleged, exculpatory lack-of-fear statement to Parsons prior to trial, or that the alleged statement was within Parsons’ knowledge prior to trial — only addressed Watkins’ more-recently raised claim that Brady required Parsons to disclose the pretrial element-of-fear conversation that Parsons had described in the state’s response. The state court closely reiterated Parsons’ uncontroverted account of that conversation and reasonably concluded that “there [was] no evidence that Mr. Parsons suggested or improperly influenced Mr. Zimm’s testimony” during it. J.A. 214.[3]
*649 II.
A.
Under the familiar principles of the An-titerrorism and Effective Death Penalty Act of 1996 (AEDPA), we may not grant federal habeas relief from a state court conviction unless the state court’s adjudication of the claim “resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the' State court proceeding,” or “a decision that was contrary to, or an unreaspnable application of’ Supreme Court precedent. 28 U.S.C. § 2254(d)(1), (2). Moreover, “a determination of a factual issue made by a State court shall be presumed to be correct,” and “[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.” 28 U.S.C. § 2254(e)(1).
Here, Watkins has not rebutted the state court’s factual findings, as written, by clear and convincing evidence. Nor does he assert that the state court’s denial of his Brady claim was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Instead, he contends that we should imply a critical finding of fact based upon evidence that he failed to present in the state court proceeding' — -a finding that the state court clearly declined to make apd that would be inconsistent with the state court’s reasonable adjudication of his Brady claim. AEDPA deference does not allow us to do so.
“By its plain terms, § 2254(d)(2) limits our review to the evidence placed before the state PCR court.” Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir.2011) (emphasis added); see also Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1400 n. 7, 179 L.Ed.2d 557 (2011). Accordingly,' “[w]e consider whether the state PCR court based its decisions ‘on an objectively unreasonable factual determination in view of the evidence before it, bearing in mind that factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.” Elmore, 661 F.3d at 850 (quoting Baum v. Rushton, 572 F.3d 198, 210 (4th Cir.2009)). Under these highly deferential standards, we must also give the state court decision “the benefit of the doubt.” Burt v. Titlow, — U.S. -, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013); Elmore, 661 F.3d at 850.
In some situations, AEDPA deference allows federal courts to infer from the state court’s “explicit factual findings and conclusion^] implied factual findings that are consistent with its judgment although unstated.” Hightower v. Terry, 459 F.3d 1067, 1072 n. 9 (11th Cir.2006) (emphasis added); see Marshall v. Lonberger, 459 U.S. 422, 433, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (applying presumption of correctness to implicit finding against the defendant’s credibility, where that finding was necessarily part of the court’s rejection of the applicant’s claim); LaVallee v. Delle Rose, 410 U.S. 690, 692, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973) (per curiam) (same); Lee v. Comm’r, Ala. Dep’t of Corr., 726 F.3d 1172, 1213 (11th Cir.2013) (“[W]e affoi’d AEDPA deference even where the state court’s decision is a summary adjudication or engages in only some evaluation because ‘implicit findings’ may. be inferred from dispositive rulings.” (emphasis added)); Blankenship v. Hall, 542 F.3d 1253, 1272 (11th Cir.2008) (“We have previously recognized a state court’s dis-positive ruling may contain implicit findings, which, though unstated, are necessary to that ruling.” (internal quotation marks omitted)(emphasis added)); Valdez v. Cockrell, 274 F.3d 941, 948 n. 11 (5th Cir.2001) (“The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state *650 court’s conclusions of mixed law and fact.”); 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2579 (3d ed. -2004) (“In some cases if the court fails to make a finding on a particular fact it has been assumed that it found against the party carrying the burden of persuasion on that fact or that it impliedly made a finding consistent with its general disposition of the case.”) (footnotes omitted).
“In such cases, we make the common sense judgment that material factual issues were resolved by the [state] court in favor of the judgment when it was reasonable for that court to have done so in light of the evidence.” Hightower, 459 F.3d at 1072 n. 9 (original alterations and internal quotation marks omitted); see also Marshall, 459 U.S. at 433, 103 S.Ct. 843 (Where “it was clear under the applicable federal law that the [state] court would have granted the relief sought by the defendant had it believed the defendant’s testimony, its failure to grant relief was tantamount to an express finding against the ... defendant.”); LaVallee, 410 U.S. at 695, 93 S.Ct. 1203 (same).[4]
Here, however, Watkins urges us to do the opposite. Watkins contends that he is entitled to federal habeas relief from his state court conviction because the state habeas court, in the course of denying his Brady claim, found that “at some time after the trial of this matter, trial counsel was told that Mr. Zimm said he was not ‘afraid’ at the time of the incident at issue.” J.A. 211 (emphasis added). But instead of having us interpret that single finding of fact in a manner consistent with the state court’s other findings and conclusions, as well as its reasonable disposition of the claim in light of the evidence presented, Watkins urges us to rewrite and add to the finding in a manner that is inconsistent with them.
Specifically, Watkins contends that the state court meant to find, or impliedly found, instead, that “at some time after the trial of this matter, trial counsel was told [by Parsons] that Mr. Zimm said [to Parsons] that he was not afraid at the time of the incident,” and that Zimm said this to Parsons prior to Watkins’ trial. To be sure, these additions to the state court’s actual finding of fact are critical to any plausible claim on Watkins’ part that a Brady violation occurred. But we cannot simply ignore the fact that the state court did not make them or that, based upon the evidence presented, the state court reasonably-denied the Brady claim instead. Indeed, I do not see how it had any other choice.
*651 The state court did not find that Zimm made an exculpatory statement to Parsons prior to trial. The state court did not find that Parsons admitted to Adkins that Zimm made an exculpatory statement to him prior to trial. And, of course, the state court did not find that Parsons or the state had knowledge of any exculpatory statement by Zimm prior to trial. Watkins does not point to any evidence that would directly support, much less compel, these modifications to the state court’s findings of fact. Instead, he contends that we should include them because the state did not produce evidence that someone other than Parsons told Adkins that Zimm made the alleged, exculpatory statement, and because the state did not produce evidence that Zimm made the alleged, exculpatory statement after the trial. This reasoning not only impermissibly reverses the burden of proof from Watkins to the state to disprove his allegation, it turns AEDPA deference on its head.
B.
Although I cannot know precisely why the state habeas court phrased this single factual finding in the manner that it did, it is still entitled to a presumption of correctness, and the state court’s decision on the merits of the Brady claim may not be set aside unless it is an unreasonable one in light of the evidence that was presented to the state court. One need only read Adkins’ brief testimony about the whole matter to conclude that it is not.
Frankly, if I had been the state court judge, I would not have found that anyone told Adkins that Zimm said to anyone at any time that he was not afraid during the attempted robbery. But I am not the finder of fact. My obligation is to give deference to the state court’s reasonable adjudication of the constitutional claim in light of the evidence presented to it, and to give the state court the benefit of the doubt when doing so.
That said, there could be any number of reasonable explanations for why the state court penned this single finding as it did. Maybe the state court simply made a mistake. Or maybe the state court meant to say exactly what it did and nothing more.' The. state court record suggests that there were other persons present during the post-trial conversation, Adkins’ memory of the conversation was admittedly “fuzzy,” and Adkins was not allowed to refresh his memory with the contemporaneous note to which he persistently referred. J.A. 195. As the finding is written, therefore, the state court might well have decided to give state habeas counsel the benefit of the doubt as to whether the Brady allegation had been made in good faith, deserving of the evidentiary hearing that was provided to Watkins to prove the claim. But it would not have made a finding that was inconsistent with the balance of its other findings and conclusions, unsupported by the evidence that Watkins brought forth to support the allegation, or inconsistent with its eminently reasonable decision to deny Watkins’ Brady claim' based upon that evidence.
The line of cases relied upon by the dissent also would not allow us to translate a single, ambiguous finding of fact, or even a mistaken one, into an inconsistent one that is not supported by the evidence, in order to upset the state court’s reasonable rejection of the constitutional claim. See, e.g., Garcia v. Quarterman, 454 F.3d 441, 444 (5th Cir.2006) (noting that “ ‘[t]he statute compels federal courts to review for reasonableness the state court’s ultimate decision, not every jot of its reasoning’ ”) (quoting Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir.2001) (emphasis added)); see also Santellan, 271 F.3d at 193 (“[Ejven where a state court [has] made a mistake, ... ‘we are determining the reasonableness of the state court’s ‘decision,’ ... not grading their papers.’ ”) (quoting *652 Cruz v. Miller, 255 F.3d 77, 86 (2d Cir.2001) (second alteration in original); Cruz, 255 F.3d at 86 (“Although sound reasoning will enhance the likelihood that a state court’s ruling will be determined to be a reasonable application of Supreme Court law, deficient reasoning will not preclude AEDPA deference, at least in the absence of an analysis so flawed as to undermine confidence that the constitutional claim has been fairly adjudicated.”) (internal quotation marks and citations omitted)).
In the end, however, my interpretation of the state court’s explicit finding of fact is irrelevant, for I am not at liberty to pick it apart or rewrite it in the light most favorable to Watkins. See, e.g., Wainwright v. Goode, 464 U.S. 78, 85, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983) (per curiam) (holding that where the state court “record [wa]s ambiguous,” “the Court of Appeals erred in substituting its view of the facts for that of the [state court]”); Palmer v. Estelle, 985 F.2d 456, 459 (9th Cir.1993) (“Where the record is ambiguous, [the state] court’s factual findings are deemed to be ‘fairly supported by the record.’ ”) (quoting Wainwright, 464 U.S. at 85, 104 S.Ct. 378). Watkins bore the burden of presenting clear and convincing evidence that the state habeas court’s factual finding, as written, was not entitled to the presumption of correctness that AEDPA grants it. He has not done so. Even if he had, he would only have shown that this single factual finding was either incorrect or incomplete, neither of which would compel us to replace it with a factual finding that is unsupported by the evidence and inconsistent with the state court’s decision. Watkins was required to show that the state court’s ultimate rejection of his Brady claim was an unreasonable one in light of the evidence presented to the state court, see Winston v. Kelly, 592 F.3d 535, 555 (4th Cir.2010), and this he cannot do.
III. The Federal Habeas Proceedings
I turn now to the district court’s decision, and the troubling factual misrepresentations that Watkins made to it about the evidence of record.
A.
From the outset, Watkins represented to the district court in his § 2254 petition that Adkins “testified that he heard Prosecutor Parsons say (at an unrelated hearing) that at some point before trial the alleged victim, Mike Zimm, told him that he was not afraid on the day in question.” J.A. 235. That is untrue.
Watkins then proceeded to further supplement Adkins’ actual testimony with testimony that he wishes Adkins had given. According to Watkins:
At some point after the trial, [Adkins] was present at an unrelated hearing where [Parsons] was also present. At the unrelated hearing, Adkins heard Brian Parsons say that at some point before Watkins’ trial he met with the alleged victim, Mike Zimm, and during that meeting Zimm told Parsons that he was not in fear the day Watkins came to his store. Parsons, in the presence of Jim Adkins, then admitted that he then told Zimm that if he wasn’t in fear that day, then it was pointless to pursue the case as a robbery. Mr. Zimm’s statement at that meeting witli [P]arsons was the opposite of what he testified to at Watkins’ trial.
At Watkins’ Omnibus Habeas Corpus Hearing, Mr. Adkins did testify to all of this, and then gave his professional assessment that if he had known about ■Zimm’s contradictory statements before trial, it would have potentially affected the outcome....
*653 Mr. Parsons does not deny that such a conversation between he and Mr. Zimm took place. In fact, he admits to it in the State’s Response to Watkins’ Petition.
J.A. 239-40. Again, this is untrue. If Adkins had actually “testified] to all of this,” id. at 240, Watkins might well have had a plausible Brady argument. But Adkins did not.
Watkins’ summary is no mere “overstate[ment]” of “the strength of Adkins’ testimony.” Dissent at 660. It is created out of whole cloth. Adkins did not testify that Parsons told him anything about his pretrial conversation with Zimm, much less that Parsons admitted to him that Zimm made an exculpatory statement. Instead, Watkins took selected portions of Parsons’ response to the state habeas petition, and put them into the mouth of Adkins — except, of course, that most important portion where Parsons denied that Zimm made the alleged, exculpatory statement to him. Parsons did not deny having a pretrial conversation with Zimm about the element of fear, but he most certainly did “deny that such ... conversation” included a “contradictory statement” by Zimm that “he was not in fear the day Watkins came to his store.” J.A. 240.
.Unfortunately, the district court appears to have accepted Watkins’ unsubstantiated factual narrative. It likewise erroneously recounted Adkins’ testimony as follows:
During the [omnibus evidentiary] hearing, James Adkins, the petitioner’s trial lawyer, testified that, at an unrelated hearing after the petitioner’s trial, he overheard Brian Parsons, the prosecutor at the petitioner’s trial, describe a conversation he had with Zimm before the petitioner’s trial. In Adkins’s presence, prosecutor Parsons stated that Zimm told him during this pretrial conversation that he had not been in fear on the day the petitioner entered his store. According to Adkins, the prosecutor said that his response to Zimm was that if he was not in fear, the case for attempted robbery could not proceed. Adkins made a contemporaneous note of the conversation. Although the note was not admitted into evidence, its substance was discussed during the hearing and in the parties’ briefing.
J.A. 391 (emphasis added). Again, no such testimony by Adkins exists, and neither the “contemporaneous note” nor 'anyone’s' summary of it was introduced into evidence before the state court.
Proceeding from this incorrect eviden-tiary premise from the outset, the district court found that “[tjhere [was] no evidence to controvert” Adkins’ nonexistent testimony, and it rewrote the state court’s factual finding into the one that Watkins wanted:
“[A]t some time after the trial of this matter, trial counsel was told [by the prosecutor] that Mr. Zimm said he was not ‘afraid’ at the time of the incident at issue.”
J.A. 396 (alteration of state court finding in original) (emphasis added). Having made this unsubstantiated factual finding that Parsons admitted to Adkins that he had knowledge of the alleged Brady statement, and operating under the additional, assumption that Parsons had knowledge of it prior to trial, the district court was then in a position to conclude that the state court’s denial of relief in light of these implied findings'was unreasonable under 28 U.S.C. § 2254(d)(1). This was error.
The district court’s extraordinary steps to its grant of federal habeas relief have gone far afield from the “evidence presented in the State court proceeding,” 28 U.S.C. § 2254(d)(2), and give inadequate deference to the state court’s reasonable adjudication of Watkins’ Brady claim in light of that evidence.
*654 B.
On appeal, the dissent has similarly stretched Adkins’ testimony into a version that does not exist. According to the dissent, “Adkins identified Parsons, and only Parsons, as the person who told him about Zimm’s alleged lack-of-fear statement.” Dissent at 660. But in actuality Adkins did not identify Parsons even once as a person who told him after trial that Zimm had said he was not afraid during the crime.
Simply put, Adkins was the only witness that Watkins called to substantiate his allegation, and Adkins did not do so. There is no need for us to interpret or add to Adkins’ testimony. Nor is it within our province to do so. Adkins’ testimony speaks for itself.
When Adkins was explicitly questioned about Watkins’ Brady allegation, he testified that he did not recall Parsons “ma[king] comments to the effect that Mr. Zimm told him that he wasn’t afraid during this whole incident.” J.A. 194. When pressed by state habeas counsel, Adkins testified that he “believe[d] he recalled a conversation that took place after Watkins’ trial and that he “may have made a contemporaneous note” of the substance of that conversation. Id. But Adkins never agreed with state habeas counsel’s leading statement that during this conversation “ ‘Parsons suggested that Mr. Zimm had told him that he wasn’t afraid of Mr. Watkins.’ ” Dissent at 660. Rather, Adkins immediately and repeatedly referred to the contemporaneous note that he believed he had given to state habeas counsel and he all but asked counsel to produce it to him.
When Watkins’ counsel instead asked Adkins to put in his own words his “independent recollection of that conversation,” Adkins did not testify that Parsons “suggested that Mr. Zimm had told him he wasn’t afraid of Mr. Watkins.” J.A. 194-95. And he did not identify Parsons even once as a person who told him that Zimm had said that he was not afraid during the attempted robbery. On the contrary, Adkins testified, and only testified, to his “independent recollection” and in his own words, that “Parsons had stated something to the effect that Mr. Zimm might not have been scared of Mr. Watkins on ... the date of the alleged robbery[,]” J.A. 195 (emphasis added), which is more opinion than fact and offers nothing in the way of when or why Parsons developed this belief about Zimm.
Interestingly, the dissent seemingly acknowledges Watkins’ failure of proof, as it too points to no testimony that would support the district court’s implied factual finding that Parsons admitted to Adkins that Zimm told Parsons that he was not afraid of Watkins at the time of the robbery.[5] Instead, the dissent focuses upon the state’s case, faulting Parsons for not denying Watkins’ allegations in the way it believes he should have and criticizing the state for putting up what it deems to have been a “lackluster showing” at the state evidentiary hearing. Dissent at 660 n. 2.
For example, the dissent criticizes Parsons for not “challeng[ing] Adkins’ recollection of his post-trial conversation with *655 Parsons” and for not “suggest[ing] that Zimm could have made the alleged statement after trial.” Dissent at 658. But, of course, this was not the state’s burden to bear and the state had no obligation to make any showing at the state evidentiary hearing. It was Watkins’ burden to prove that Zimm made the alleged, exculpatory statement, that he made it to Parsons, and that he made it prior to trial. He did not. Watkins chose not to call Zimm or Parsons as a witness to explore their pretrial conversations. Watkins chose to call Adkins to prove his claim, but Adkins’ memory did not allow him to serve that role and Watkins did not produce Adkins’ contemporaneous note to refresh his memory.
Indeed, why would Parsons have felt the need to challenge Adkins’ recollection of the post-trial conversation? And why would he have endeavored to find and present evidence that Zimm made the alleged “lack-of-fear” statement after trial or to someone else? Parsons had already denied that Zimm made the alleged Brady statement to him and Adkins had not contradicted this denial with testimony that Parsons had admitted to him that the exculpatory statement was made. Little wonder, therefore, that the state court did not find that Zimm made the alleged statement to Parsons, did not find that Zimm made the alleged statement to anyone else, and did not find that Parsons told Adkins about the alleged statement.
The dissent likewise criticizes the manner in which Parsons denied Watkins’ allegation in the state’s response to Watkins’ state habeas petition. Although the dissent admits that Parsons denied Watkins’ allegation, it urges us to. brush this inconvenient fact aside as well because, in its opinion, Parsons “had every reason to minimize Zimm’s ‘lack-of-fear’ during the robbery.” Dissent at 660. But the dissent points to nothing in the record that supports this assumption about Parsons’ motives, much less its implied finding that the state court was of this unspoken view as well.
The dissent also creates a host of additional implied findings pertaining to Parsons’ denial. The dissent has decided that “Parsons attempted to finesse exactly what witness Zimm said at their pre-trial meetings,” that he “parsed and qualified their exchanges” during these meetings, and that he intentionally “le[ft] open the possibility that Zimm did say something short of never being afraid but still not amounting to the required not in ‘fear of bodily injury.’” Dissent at 661. Again, there is nothing in the record to support these accusations against Parsons, and the state court certainly did not make any such adverse credibility findings against him.
In effect, the dissent faults Parsons for not explicitly denying an endless variety of unspoken but theoretically possible variations of the allegation that Watkins made and that Parsons denied, all the while ignoring the fact that Watkins could have explored any such suspicions about Parsons’ response at the evidentiary hearing. Parsons did not choose the words that comprised the allegation against him. Watkins did. And I certainly cannot fault Parsons for phrasing his denial of Watkins’ accusation by using the same accusatory words that were used against him.[6]
In any event, such speculation about prosecutorial motives during the pleading stage is misplaced given our deferential standard of review and Watkins’ clear fail *656 ure to prove his allegation. The question is whether the state court’s decision to reject Watkins’ Brady claim was an unreasonable one in light of the evidence that Watkins presented in support of it. Watkins cannot excuse his failure of proof by relying upon an alleged “lackluster showing” by the state, nór can we. Dissent at 660 n. 2. All agree that Watkins’ sole allegation in his petition was that Zimm told Parsons prior to trial that he was “never afraid,” J.A. 181, and all agree that Parsons denied Watkins’ allegation. As the dissent also acknowledges, Parsons was in the courtroom. Watkins could have called Parsons as a witness to ask him, for example, whether Zimm “sa[id] something short of never being afraid.” Dissent at 661. More simply, Watkins could have just asked Parsons what Zimm said to him. Watkins also could have called Zimm as a witness and asked Zimm what he said to Parsons. In short, Watkins was provided a full opportunity to explore any and all pre-trial conversations between Zimm and Parsons. Instead, Watkins did nothing, and now wags his finger at the state for not disproving his unproven allegation.[7]
C.
To conclude, Watkins’ arguments are plentiful, but they are based upon summaries of evidence that does not exist. The district court’s implied finding that Parsons admitted the Brady violation to Adkins is likewise built upon nonexistent evidence and supposition. Parsons did not agree in- the state’s response to Watkins’ state habeas petition that Zimm made the alleged exculpatory statement during their pretrial conversation. Watkins points to no testimony by Adkins that Parsons admitted that Zimm made the alleged exculpatory statement to him prior to trial. The state court did not find that Parsons admitted to Adkins that Zimm made the exculpatory statement, and the evidence presented in the state court proceeding does not require us to imply a finding that would be contrary to the state court’s reasonable adjudication of this claim. Even if I were at liberty to review Watkins’ state habeas petition de novo, I could find no basis upon which to grant relief on this record. I certainly cannot say that the state court’s decision to deny relief was an unreasonable one.[8] ■

. As discussed in more detail below, Watkins plainly misrepresented the substance of Adkins’ state court testimony during the federal habeas proceedings. In addition, Watkins attached to his pro se federal habeas petition a typewritten note that he now represents to be the "contemporaneous note” mentioned by Adkins. This note references "chatter” amongst the various persons during a sentencing hearing for an unrelated defendant that occurred on April 1, 2008. We cannot know whether the "contemporaneous note” that surfaced during these federal habeas proceedings is the "contemporaneous note” that Adkins referenced in his testimony. The *647 place and time to determine that was during the state court proceedings. But even if we were to consider the note, it would create more problems for Watkins. The note that Watkins chose not to show to the state habeas court, but now urges us to see, dates the conversation as having occurred on April 1, 2008, after Watkins' trial but prior to his sentencing. Adkins was not "out of the case” at that time, J.A. 196, and he would have necessarily been aware of any alleged, exculpatory statement prior to the conclusion of the state trial proceedings. In other words, Watkins’ Brady claim would most likely be procedurally barred, see W. Va.Code § 53-4A-l(c), which may well explain why state habeas counsel did not produce the note during the state habeas proceedings despite Adkins’ repeated references to it.

. Watkins' state habeas counsel might well have been concerned about his ability to prove the existence of the alleged lack-of-fear statement from the inception of the evidentia-ry hearing. Prior to presenting Adkins’ testimony, Watkins’ counsel had instead described the eleventh claim as one involving alleged improper "coaching” of the witness. See J.A. 191 (advising the state habeas court that the "eleventh contention involves an allegation that Mr. Parsons essentially coached Mike Zimm, the prime witness and alleged victim in this matter”). However, Adkins also provided no evidentiary support for this more-recent claim. On cross-examination by the state, Adkins testified that he did not "have any problem with an attorney for the State saying to a victim that, ‘If you're not afraid or you don’t feel that you were afraid, you need to tell me and we’re not going to take this case forward,' ” and that he did not "feel in [his] professional opinion that that is coaching a witness.” J.A. 201.

. The dissent acknowledges that the state ha-beas court's "very wording closely mirrors that of the prosecutor’s response to the habe-as petition,” but does so as support for its view that the state court must have "accepted and adopted Prosecutor Parson’s uncontro-verted account as to the timing of the alleged fear statement.” Dissent at 658 (emphasis added). But this focus on timing obfuscates the actual deficit in Watkins' proof, and confuses Watkins’ allegation regarding Zimm’s alleged "lack-of-fear” statement with Parsons’ acknowledgment that he had a conversation with Zimm about the requirement of fear that did not include any such statement by Zimm. Obviously, the timing of the pretrial conversation ' between Parsons and Zimm, which served as the basis for Watkins' "coaching” allegation, is not in dispute. But the existence of Zimm’s alleged "fear statement” during the pretrial conversation has always been in dispute. The dissent persists in conflating the two things, even though the state court never did. Thus, I agree that the state habeas court appears to have "accepted and adopted Prosecutor Parsons uncontroverted account” of the pretrial conversation. Id. Indeed, it is the only account of that conversation, because Watkins chose not to explore it or offer any other evidence about it. However, we cannot ignore the fact that this same "uncontroverted account” by Parsons of the pretrial conversation includes Parsons’ explicit denial that Zimm made the alleged lack-of-fear statement during it.

. The dissent asserts that this "is simply not the law,” but points us to no contrary authority. Dissent at 662. In none of the cases cited by the dissent did the court imply an inconsistent finding of fact, afford it a presumption of correctness, and place the burden upon the state to rebut it. On the contrary, the Blankenship decision, which is also relied upon by the dissent, made it clear that a state court's " ‘dispositive ruling may contain implicit findings, which, though unstated, are necessary to that ruling.' ” Blankenship v. Hall, 542 F.3d 1253, 1272 (11th Cir.2008) (emphasis added). Such "necessary” findings "can be inferred from its opinion and the record,” and they “are entitled to deference under § 2254(d) to the same extent as explicit findings of fact.” Id. But nowhere did the Blankenship court indicate that inconsistent, and by definition unnecessary, state court findings of fact can be inferred based upon our interpretation of an explicit factual finding or the state court record. Moreover, "while state court findings of fact can be implied” from the state court’s dispositive ruling, " 'they cannot be imagined from thin air.' " Id. at 1272 n. 5 (quoting Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir.1992)). That is precisely what the district court and the dissent would have us do here. Neither points to evidence that Parsons admitted to Adkins that Zimm made the exculpatory statement to him, because it does not exist.

. In fact, the dissent acknowledges that "Adkins used qualifying words and equivocal phrases about what, precisely, he heard, and suggested that his 'contemporaneous note would probably be more accurate than [his] memory,’ ” Dissent at 660 (quoting J.A. 195) (emphasis and alteration in original), but this only highlights the point. Adkins simply did not provide the requisite support for Watkins' allegation that "he was present during a pre-hearing conversation with [Parsons] who allegedly uttered that [Zimm] told him that he was never afraid.” J.A. 181.

. To the extent there is any confusion, the only "written statement [submitted] to the state habeas court," Dissent at 661, was the state's response to Watkins’ habeas petition, denying Watkins’ sole claim that Zimm had made the alleged “lack-of-fear” statement pri- or to trial. Those pleadings, of course, provide no basis for the implication that Parsons was engaged in such word-play on the day of the evidentiary hearing.

. As noted earlier, on the morning of the state evidentiary hearing, Watkins changed the focus of his Brady claim from the alleged "lack-of-fear” statement by Zimm (which was alleged in the petition) to the "coaching” allegation against Parsons (which was grounded in Parsons’ response to the petition). On cross-examination by the state, however, Adkins equally failed to support this newly-raised claim and it too was rejected by the state court.
On federal habeas review, Watkins has attempted to change the focus back to his original allegation. But in order to do so, he falsely represented Adkins' testimony to the district court and attempted to introduce for the first time the alleged "contemporaneous note” authored by Adkins. That note, however, contradicts Adkins’ testimony that he was "out of the case” at the time of this alleged "post-trial” conversation between him and Parsons, and places it as having instead occurred prior to the conclusion of the trial proceedings. By withholding the note from the state court, Watkins deprived the state court of the ability to address not only the substantive content of the note but also the procedural implications that stem from it. Hardly a better case could be made for why we must defer to the state habeas court's reasonable rejection of Watkins’ claim in light of the evidence that was presented to it.

. On appeal, the dissent seeks to write into the state court's decision yet another implied finding, i.e., that the alleged, exculpatory statement was not material. I do not concede that the alleged but unproven statement by Zimm would have been material under Brady if there was evidence that he actually said it, much less that the state court would have been unreasonable under AEDPA's deferential standard of review if it had found that the statement was not material. The state court never found that Zimm made the alleged *657 statement, or that Parsons had knowledge of any such statement prior to Watkins’ trial, or that Parsons failed to disclose any exculpatory evidence to Watkins in a timely manner. Consequently, it had no reason to address materiality and it did not make any such materiality finding.